(Decided March 1st, 1895.)

# THEODORE COOKE *vs.* THE BALTIMORE TRACTION CO.

*Negligence—Turning Corners by Electric Cars—Rights of Travelers on Highways—Contributory Negligence.*

The question of negligence growing out of an injury by a Street Railway Company to a person rightfully upon a public thoroughfare, is governed by principles different from those applicable to an injury inflicted by a Steam Railroad Company upon a trespasser wrongfully upon the company's right of way.

The propulsion of an electric or cable car at full speed around the corner of a street, in a populous city, without a previous look out to ascertain whether the track is clear or not, is an act of negligence.

Plaintiff drove at night upon the track of the defendant just after crossing the street where the track turned the corner.   Before doing so

he looked to see if a car was approaching on that track, and neither saw nor heard one. About ten feet from the corner his vehicle was struck from behind by an electric car which had swung around the corner at full speed, without a headlight and when no bell had been rung. The motorman could have seen the plaintiff when he drove upon the track. *Held,*

1st. That such facts constitute evidence of negligence on the part of the defendant.

2nd. That the failure of plaintiff to see or hear the car was not contributory negligence in law, because he made every reasonable effort to look and listen.

Where the nature of the act relied on to show negligence contributing to the injury can only be determined by considering all the circumstances surrounding the transaction, it should be passed upon by the jury, and it is not for the Court to determine its quality as matter of law.

Appeal from the Baltimore City Court. The case is stated in the opinion of the Court. At the conclusion of the plaintiff's evidence, the trial Court (WRIGHT, J.), instructed the jury that " though they should find the defendant guilty of negligence, yet the uncontradicted evidence shows that the accident happened by reason of the contributory negligence of the plaintiff, and their verdict must therefore be for the defendant."

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*Wm. Pinkney Whyte,* for the appellant.

*Edward Duffy,* for the appellee.

At the close of the plaintiff's testimony, the Court, at the request of the defendant, instructed the jury to find for the defendant, because of the contributory negligence of the plaintiff. The plaintiff himself admitted that had he seen the car he would not have crossed, but should have stopped, which would have been the proper thing. He was going at the rate of 5 miles per hour, and at the instant of passing the building line he could only see 25 feet down Fayette street, and this distance rapidly decreased. It cannot be

disputed that the car was on Fayette street, and it must have been very near the plaintiff at the time that he crossed. The only reason that he did not see it was because he did not look. The car was coming towards him and he goes almost immediately in front of it without looking. It is submitted that this was contributory negligence on his part. *Dyrenfurth's case,* 73 Md. 374; *Carson* v. *Rwy.,* 147 Pa. St. 219; *Ehrisman* v. *Rwy.,* 150 Pa. St. 180; *Wheelahan* v. *Rwy.,* 150 Pa. St. 187; *Thomas* v. *Rwy.,* 132 Pa. St. 504.

The only alleged negligence is the non-ringing of the bell. If the bell was not rung, this did not excuse the plaintiff from looking when he was about to cross the tracks of a railway. If he does not look, and a collision takes place, such collision happens by reason of the folly and recklessness of the plaintiff, and not by reason of the carelessness of the defendant. *Schroeder's case,* 69 Md. 551. *Bacon's case,* 58 Md. 482.

If, as it has attempted to be shown, the plaintiff was guilty of contributory negligence, then the only theory upon which the plaintiff's case could have been submitted to the jury, was upon the theory that the defendant could have avoided the consequences of such contributory negligence. Of this latter fact there was no evidence. The case was properly taken from the jury.

McSHERRY, J., delivered the opinion of the Court.

This is another of the numerous negligence cases which have come before us from Baltimore City since the rapid transit system was introduced there. It is a case growing out of the alleged carelessness of the employees of a street railway company, whereby the vehicle of the plaintiff, which was rightfully on a public street of Baltimore, was run into and demolished by a cable car belonging to and operated by the defendant company. The legal principles applicable to and governing such a case have been frequently and explicitly announced by this tribunal; but repeated efforts to invoke and rely on doctrines which have

exclusive application to a totally different class of decisions
render it necessary for us to briefly reiterate what was sup-
posed to be thoroughly and definitely settled.   There is, to
begin with, no possible analogy between a case growing out
of an injury caused by a street railway car to a person
rightfully upon the public thoroughfare, and a case
involving an injury inflicted by a steam railroad train on a
trespasser wrongfully upon the latter company's right of
way.   And this is so, because the citizen has the same
privilege to use the street for travel that the street railway
company has for propelling its cars thereon ; and the railway
company has, apart from its franchise to lay its rails, no
right to the use of the street as a highway superior in any
degree to that possessed by the humblest individual.   The
franchise to lay its rails upon the bed of a public street gives
to the company no right to the exclusive use of that street,
and in no respect exempts it from an imperative obligation
to exercise due and proper care to avoid injuring persons
who have an equal right to use the same thoroughfare.   It
is bound to take notice of, recognize and respect the rights
of every pedestrian or other traveler, and if by adopting a
motive power which has increased the speed of its cars, it
has thereby increased, as common observation demonstrates,
the risks and hazards of accidents to others, it must, as a
reciprocal duty, enlarge to a commensurate extent the degree
of vigilance and care necessary to avoid injuries which its
own appliances have made more imminent.   This is so self-
evident and manifest that no argument is needed to support it.

Negligence is essentially relative and comparative, not
absolute.   It is not even an object of simple apprehension
apart from the circumstances out of which it grows.   As
these circumstances necessarily vary in their relations to
each other, under different surroundings they inevitably
change their original signification and import.   Hence it is
intrinsically true that those things which would not under
one condition constitute negligence, would, on the other
hand, under a different, though not necessarily an opposite

condition, most unequivocally indicate its existence. Thus an act which would have been neutral or indifferent when street cars were drawn by horses at a comparatively low rate of speed, and could consequently be readily brought to a stop as occasion required, would become culpably negligent since the change of motive power and the great acceleration of speed incident thereto under the rapid transit system. The existence of negligence is therefore to be sought for in the facts and surroundings of each particular case. But there will generally be found standing prominently out in many instances of this character a disregard of the safety of others, a want of caution to avoid injury where the duty to use that caution is incumbent, and a reckless or heedless use of dangerous agencies in localities where the peril from their use is obvious. When these conditions or any of them are presented, and an injury is inflicted in consequence upon another, a case of actionable negligence has been made out, provided the plaintiff is himself free from contributing blame.

Now, the case before us, as presented by the plaintiff's evidence, discloses the following facts : The defendant operates its street cars by a cable. Part of its route extends over portions of Fayette and Gilmor streets. At the intersection of these two streets the double tracks of the company curve sharply around the northeast corner. The right-hand track on Fayette street, as you face the west, is used by cars going west on that street and north on Gilmor street, and the left-hand track is used by cars going south on Gilmor and east on Fayette streets. The plaintiff, who is a physician, was returning in his buggy, about a quarter before eleven on the night of the accident, from visiting a patient, who lived on Gilmor street, south of Fayette. Driving to the northward on Gilmor street, he kept, as he ought to have done, on the right or eastern side. Before reaching Fayette street, which he was compelled to cross in order that he might continue on up Gilmor street, he saw a car coming south on Gilmor, north of Fayette street, towards

him.  When it reached the point where the curve bending into Fayette street begins, it stopped.  After he had passed the building line of Fayette street he looked east, down Fayette street, to see if a car was approaching on the right-hand track up that street towards Gilmor street, and he neither saw nor heard one.  The boy who was with him leaned out of the buggy and also looked with a like result. There were street lights burning on the corners of these streets.  The plaintiff was driving at a speed of four or five miles an hour.  From the time he emerged from behind the houses on Gilmor street and passed the building line of Fayette street, with these lights shining full upon him, he was clearly in a position where the gripman of the car going west on Fayette street had an unobstructed view of him, and the gripman either saw, or by the use of the slightest care could have seen that the plaintiff was driving straight towards the track upon which the car was moving.  Notwithstanding this he rang no bell, gave no signal or warning, but swung his car around the curve into Gilmor street, at full speed, without a headlight, and about ten feet north of the northeast corner crashed into the plaintiff's buggy, forcing it against the car standing on the opposite track and shivered it into splinters.  The gripman had ample time to check the speed of his car ; and if he saw that the plaintiff was driving to a place of peril he was bound to stop and avoid a collision otherwise inevitable.  If he did not see the plaintiff he was equally negligent in not stopping before sweeping around the curve, because a proper regard for the safety of persons who might be rightfully on the east side of Gilmor street above Fayette, and who would therefore be beyond the reach of his vision by reason of the intervening buildings along the north side of Fayette street, imperatively required him to stop before venturing around the curve, and to ascertain that the track beyond or north of the corner was clear.  There could scarcely be a more flagrant act of gross negligence than the reckless propulsion of a traction or electric car, at full speed, around the corners of streets

in populous cities. To escape the consequences of such wanton carelessness these companies should cause their cars to stop before turning such curves, and then to proceed under perfect control until the curve has been passed and the straight track comes into unobstructed view. It is no answer to say that this would occasion the companies great inconvenience and delays. The safety of persons rightfully on the thoroughfares is not to be put in peril because a due regard for that safety will impose upon and exact from street railway companies using dangerous agencies, such additional inconveniences and delays. Upon the question, then, of the defendant's negligence, there was ample evidence to go to the jury.

The Baltimore City Court, however, at the instance of the defendant, directed the jury to render a verdict for the defendant, upon the ground that the uncontradicted evidence showed that the accident happened by reason of the contributory negligence of the plaintiff. The verdict was so returned and recorded, and judgment was entered thereon in behalf of the defendant, and the plaintiff then took this appeal. The instruction thus granted is erroneous.

It cannot be pretended that the plaintiff blindly drove into a perilous situation or was careless as to his own safety. He and the boy who was with him looked down Fayette street in the direction an approaching car would come before driving over the tracks. That he saw and heard no car coming up that street is of itself no evidence of contributing negligence, because he made every reasonable effort to both look and listen for the approach of one; and herein the case at bar widely differs from *Dyrenfurth's case*, 73 Md. 374. His not seeing it, even though he did look for it, is quite a different thing from his not seeing it, by reason of his failure to look at all. In the latter instance his failure to see it would have resulted from his omission to do that which it was his plain duty to do, viz., to look; whereas, in the first instance, his failure to see it might have resulted from one or more of many causes which involved no negligence on his

part whatever. To say that his failure to see the car when he did look is, as an indication of negligence, equivalent to a failure to see it when he did not look, is to ignore the self-evident difference between an affirmative attempt to avoid an injury and a reckless indifference to the happening of one. He had a right to drive along the streets, and after he had looked and had seen no car approaching on Fayette street, he had the further right to cross the tracks and to assume that he would not be recklessly run down. In exercising these rights he did precisely all that a cautious and prudent man would have done under like conditions. This is all the evidence of contributing negligence which the record discloses, the defendant having adduced no evidence at all. There is no such distinct, prominent and decisive fact proved, about which ordinary minds would not differ, as to justify the Court in pronouncing the plaintiff's conduct such contributing negligence in law as would preclude him from recovering. Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as matter of law. *Fitzpatrick's case,* 35 Md. 32; *Dougherty's case,* 36 Md. 366; *Miller's case,* 29 Md. 252; *Cumberland Valley R. R. Co.* v. *Maugans,* 61 Md. 53; *Van Steinburg's case,* 17 Mich. 99.

For the reasons we have given, we think this case, upon the plaintiff's showing, ought to have been submitted to the jury, and hence there was reversible error in withdrawing it from their consideration. The judgment will accordingly be reversed and a new trial will be awarded.

> *Judgment reversed with costs above and below, and a new trial awarded.*

(Decided March 1st, 1895.)