# JOHN W. JENKINS *vs.* THE BALTIMORE & OHIO R. CO.

*Accident at Railway Crossing—Safety Gates Open—No Evidence of Contributory Negligence.*

When the plaintiff in this case approached the grade crossing of defendant's railroad at night he found the safety gates open and no watchman at the watch-box between the tracks. A large building on the corner intercepted in part the illumination of an electric light and threw a' shadow upon a portion of the six tracks. Plaintiff testified that before crossing he stopped and looked, but neither saw nor heard a train; that when half way across he heard a bell in one direction, but was struck by a train coming from the other direction which was running backwards and gave no signal of its approach by either a bell or a light. *Held*, that under these circumstances the plaintiff was not guilty of contributory negligence.

Appeal from the Baltimore City Court (DENNIS, J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John B. Gray* and *Harry B. Fowler* (with whom was *Tazewell T. Thomas* on the brief), for the appellant.

*Duncan K. Brent* (with whom were *W. Irvine Cross* and *Hugh L. Bond, Jr.*, on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

At the close of the appellant's case, the Court granted an instruction taking the case from the jury, and directing a verdict for the defendant. The position of the appellee is thus stated in its brief. "There is no question raised by this case as to whether or not the stop, look and listen rule should apply, or to what extent an open gate, is an implied assurance that the track may be safely crossed; or any other of the points passed on in the Stumpf case; but the sole question is, whether or not the plaintiff is barred by his own contributory

negligence." "Admitting, as we must," the counsel of the appellee in his brief proceeds to state, "the negligence of the railroad company in not having the gates closed at the time of the accident, and its negligence in every other particular, as made out by the plaintiff's case, yet, the plaintiff's own negligence would defeat the right to recover and warrant the lower Court in taking the case from the jury." There is no doubt that this position is correct, if the evidence makes out such a clear case of contributory negligence as that no reasonable person can differ about it, the case should have been taken from the jury. *Pennsylvania R. R. Co.* v. *McGirr*, 61 Md. 121.

But if the evidence of negligence on the part of the appellant is contradictory, or is of such a character that reasonable persons may differ as to its amounting to proof of the negligence of the appellant and that such negligence contributed to the accident, then a case would be made out for the jury; and it would be error to withdraw it from their consideration. *Lake Roland Co.* v. *McKewen*, 80 Md. 393; *Cooke* v. *Balto. Traction Co.*, 80 Md. 551; *Baker* v. *Md. Coal Co.*, 84 Md. 19. Now assuming this to be the law applicable to cases of this kind, the question is, is the conduct of the appellant relied on as sufficient in law to constitute contributory negligence on his part clearly proved by clear and uncontroverted evidence (*Maugans case*, 61 Md. 60), and if so, does it present any "prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ." "Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending circumstances ot the transaction, it falls within the province of the jury to pass upon and characterize it, it is not for the Court to determine its quality as matter of law." *Cooke's case*, 80 Md. 558.

Turning now to the evidence, the record shows that the plaintiff, a laborer, "after sundown," left his home and came to the corner of Henrietta street and Ohio avenue, and attempted to cross over the railroad tracks at that point. This is a grade crossing and a public thoroughfare. The company

has maintained there for some years safety gates, pursuant to an Act of Assembly (City Charter, sec. 791). These were open. There are six pairs of tracks on Ohio avenue. If no cars are on the track, one crossing on Henrietta street, would have an unobstructed view for four squares—and at night, a moving lantern could be seen for that distance. There is a watch-box between the tracks, but on the night of the accident no watchman was there. There are two electric lights at the crossing, one on each side of the tracks. Twenty or more feet and along the tracks from the crossing, there is an elevator building, the shadow of which by reason of the location of the electric light, is cast over the tracks. There was conflicting testimony as how clearly objects within the shadow could be seen. The plaintiff testified "it was awful dark at this house, I could not see anything;" Griffiss—the "elevator shades the tracks about 30 or 35 feet below the crossing, but a train of cars could be seen by "noticing particularly." Porter—"standing in the middle of the track, you could see" within the line of illumination; outside of that, "I could not say that one could." The account of the accident given by the plaintiff, is as follows: After reaching the crossing; "I went to go across;" "I stop always—the gates were open," "I went on and then I looked up, there is a big elevator house there;" "there is a big shed on that track and I knowed usually they always kept cars there, sometimes on both sides and I looked up and I imagined I saw some cars; it was very dark, but I thought I could see the shape of the cars in the dark, somewhere there about the house, and so then I started on across the track; when I got about middle way of the track as near as I can say, I heard a bell towards the station way, as I thought it sounded like a bell; I suppose it was a bell; and I kept walking and casting my eye that way, and just as I did that a train run up and struck me, &c." It appears, from other evidence, that it was a freight train running backwards, with the engine at the far end from the appellant. There is no evidence that there were any signals or warnings given of its approach, so that it must be assumed for our pur-

pose that no bells or other signals were given and no lights shown on the front or any part of the train. In view of all this evidence, it would seem to be an open question whether the plaintiff acted with insufficient caution. The case of *Dyrenforth* v. *B. & O. R. R. Co.*, 73 Md. 377, relied on by the appellee presented a different state of facts. There the deceased attempted to cross the railroad track *in view* of the engine; "he saw it crossing;" he didn't appear to be looking for anything;" and the Court held this amounted to contributory negligence that precluded him from recovering. The Court said "the decisive and controlling fact in this case, like the case of *Harvey* v. *B. & O. R. R. Co.*, 69 Md. 339, "was the voluntary attempt of the deceased to cross the tracks in full view of a moving engine and so near it that no person of ordinary prudence would have made the attempt. Here there was evidence tending to show, that the appellant stopped, looked and listened before he attempted to cross, and while crossing looked and listened; but was prevented from seeing the train by the darkness of the shadow from the elevator; and moreover that his attention was diverted by a sound, that he took for the sound of a bell, from the opposite direction. Whether this was correct or if it was, whether he made a proper and reasonable use of his faculties under all the circumstances of the case, were questions to be determined by the jury. The mere failure to see the approaching train, despite obstructions after he had looked, is not the same as a failure to look, when by looking he must have seen. In the latter case, "if a witness who can see testifies that he looked and did not see an object which if he had looked he must have seen—such testimony is unworthy of consideration." *Balto. Traction Co.* v. *Helms*, 84 Md. 526.

In the case at bar, however, there was the darkness down the track, and no signals or warnings, or lights, the sense of security afforded him by the open gates, and the further fact that the engine was at the further end of the approaching train, (without lights so far as we are informed) these were all facts to be regarded in determining the question whether under

all the other circumstances of the case, he by the exercise of ordinary care ought to have seen his danger and thereby avoided the accident. He was entitled to have them all submitted to the jury for their finding and it was therefore error to grant the prayer taking it from them.

> *Judgment reversed with costs to the appellant and new trial awarded.*