## MARTIN E. DIPPEL *v.* MARGARET JULIANO.

*Borrowed Chauffeur—Who Liable for His Negligence—Undertaker—Contract of Carriage—Funeral*
*Procession.*

When one lends his automobile with its chauffeur to another, the test of whether the chauffeur is the employee of the owner or the borrower, as determining liability for the chauffeur's negligence, is which has the power of control and direction, and if this depends on the adoption of one or more of varying but legitimate inferences which may be drawn from conceded or undisputed facts, or upon the existence of disputed facts, the question is usually one for the jury.                    pp. 697-699

Full dominion and control by the borrower of a servant is not necessary to impose liability on him for the servant's negligence, since this would imply the right to hire and discharge, but the mere right to point out and direct the servant as to the details of the work and the manner of doing it, leaving to the servant or his general employer the right to determine what work he shall do and what means he shall employ to do it, is ordinarily not enough.　　　　　　　　　　　　　p. 699

Where an undertaker, having borrowed an automobile and its driver for the purpose of a funeral, had the right to select the route the driver was to follow, the persons he was to carry, his position in the funeral procession, and the speed at which he was to drive, and what was done by the driver in obedience to the borrower's directions was done for the borrower, and in the performance of a contract which he had made, *held* that, as regards the borrower's liability for the driver's negligence, the question was at least one for the jury.　　　　pp. 697-700

Defendant undertaker, having, in connection with his conduct of a funeral, contracted with the deceased's daughter to transport her to the church and to the cemetery, was bound to use ordinary care and prudence to provide a reasonably skillful and prudent driver, and a safe vehicle, and he could not evade that liability by employing an independent contractor without her knowledge or acquiescence, or by asserting that the driver and vehicle were loaned to him for the occasion.　　　pp. 700, 701

In an action against two undertakers on account of injuries received by plaintiff during her father's funeral, as a result of the negligence of the driver of the automobile in which she was riding, which driver and automobile had been loaned by one defendant to the other, the borrower could not complain that his prayer, that the lender was free from liability only if he "completely" surrendered "all" control over the driver, was modified so as to relieve the lender if he surrendered "control" over the driver, especially since the court in another prayer told the jury that, to excuse the lender from liability, they must find that he surrendered control over the driver, "so that he could not exercise any control over him."　　　pp. 701, 702

The grant of a prayer which, though embodying a sound proposition, should have been refused because obscurely phrased,

*held* not ground for reversal, it seeming highly improbable that, if the jury understood the prayer at all, they were misled by it.

p. 702

*Decided March 24th, 1927.*

Appeal from the Baltimore City Court (SOLTER, J.).

Action by Margaret Juliano against Martin E. Dippel and Philip Herwig. From a judgment against the first named defendant, he appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George W. Cameron, for the appellant.*

*Vincent L. Palmisano* and *James J. Lindsay, Jr.,* submitting on brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Martin E. Dippel, the appellant in this case, is an undertaker. He was employed to conduct the funeral of the father of Margaret Juliano, the appellee, a Mr. Alvigi, who was buried in St. Vincent's Cemetery, from St. Leo's Church in Baltimore City on August 21st, 1922. Dippel had no suitable automobile of his own to use at the funeral and, as one was required, he borrowed a limousine from Philip Herwig, who was also an undertaker, and Margaret Juliano, her mother, her aunt, and several friends became passengers in that automobile, when it formed a part of the funeral procession. After it left the church, on the way to the cemetery, it collided with a street car, under circumstances which permitted the inference that the collision was occasioned by the negligence of the driver of the Herwig automobile. Miss Juliano was injured, as a result of the collision, and subsequently she brought suit against both Dippel and Herwig to recover for those injuries. The trial resulted in a verdict in her favor against Dippel, and from the judgment thereon Dippel appealed.

The only question presented by the appeal is whether Dippel is responsible for the negligence of Philip Herwig, Jr., who was driving the Herwig automobile at the time of the accident, and the facts relevant to that issue are undisputed and may be thus stated:

Dippel was apparently employed on behalf of the family of Mr. Alvigi by Mrs. Juliano, for while she sent for him, her mother paid him, and Dippel appears to have understood that he was employed by Mrs. Juliano, for he brought the bill for his services to her, although the record is far from clear on that point. He borrowed the limousine under an arrangement based rather on comity and custom than contract, by which undertakers, as the need arises, borrow and lend their automobiles and carriages to each other as a matter of accommodation, apparently without any expectation of pecuniary reward, for while they make formal charges for the service on their books, the balances are never demanded or collected.

On the occasion in question Herwig sent an automobile and a driver, to be used by Dippel in carrying out his contract with the Alvigi family to conduct the funeral of Mr. Alvigi. Dippel selected the passengers who were to go in the cars, apparently had something to do with selecting the position they were to take in the procession, and in a general way was in charge of the vehicles which formed the funeral procession. He neither employed nor paid the driver of the Herwig car, and had nothing to do with his operation of it, except that he appears to some extent at least to have controlled its route, its destination, and the speed of the cars forming the procession of which it was a part.

The plaintiff's theory of the case is that when the accident occurred the automobile was, for the time and for the purposes of this case, in the possession and control of Dippel, who was using it to carry out a contract which he had made to transport the family of Mr. Alvigi to the church and the cemetery where the funeral services of their father and his interment respectively took place, and that, regardless of

the nature of the bailment, he was answerable for its operation while employed in the performance of that undertaking.

There are but two grounds on which Dippel could be charged with liability for the plaintiff's injuries, one that they were occasioned by the negligent act of his servant acting within the scope of his employment, and the other that they resulted from a breach of his contract of carriage.

It is undisputed that at the time of the accident the driver of the automobile which caused the injuries was in the general employment of Herwig, but it is just as true that at that time he was not engaged in Herwig's business, but was engaged upon Dippel's business. The rule applicable to such cases has been so recently and so frequently before this Court, that any extended discussing of it seems unnecessary. In *Sacker v. Waddell,* 98 Md. 51, one of the earlier cases, after stating the general rule that an owner who furnishes a vehicle together with a driver to operate it is responsible for the driver's negligence, the court said: "Although we are of the opinion that the law applicable to such cases is now well established to be as above stated, there may of course be circumstances which would relieve a master for injuries sustained by reason of the negligence of one who is in his general employ. The master may so hire or loan his servant to another for some special service, as that he will, as to that particular service, become the servant of such third person. If the master has parted with all power of control over the servant and permits the third person to make such use of him as he may deem proper, he may *quoad* that service, be the servant of the third person, and not of the general master." In *Salowitch v. Kres,* 147 Md. 29, in speaking of the presumption that the owner of an automobile is responsible for the negligence of his servant in operating it, it is said: "It is equally well established that this presumption is a rebuttable one and may be rebutted by the uncontradicted testimony offered on behalf of either the defendant or the plaintiff, or both, and when so rebutted the case ought not to go to the jury." And in *Hooper v. Brawner,* 148 Md. 431, it is said that it would be "unreasonable and illogical to hold the

general employer liable for the acts of his servants in the performance of a duty which had been ordered and directed by the borrower, and which the general employer had not the power either to direct, control or prevent." Upon facts somewhat analogous to these here involved, it was decided in *Brawner v. Hooper*, 151 Md. 579, that whether the chauffeur was the servant of the owner or the borrower at the time of the accident was a question of fact for the jury, and not a question of law for the court. Upon these cases and the reasoning upon which they rest it is difficult to formulate any sounder test for determining whether at the time of the accident the chauffeur was the employee of the owner or the borrower than that of the power of control and direction. 39 *C. J.* 274. And where upon the evidence that fact depends upon the adoption of one or more of varying but nevertheless legitimate inferences which may be drawn from conceded or undisputed facts, or upon the existence of disputed facts, the question is usually one for the jury.

The only difficulty about the rule, and it is a real difficulty, is to determine what is meant by "control." Ordinarily it means the power to govern, dominate, direct or supervise in some respect the conduct of another, but the difficulty arises in attempting to define the extent or degree of dominion necessary to constitute the "control" which the borrower must have over a servant loaned to him before he becomes responsible for his acts, as the word is used in cases applying the rule. Evidently full dominion and control is not necessary, for that would imply the right to hire and discharge, and that is nowhere regarded as essential, while the mere right to point out and direct the servant as to the details of the work and the manner of doing it, leaving to the servant or his general employer the right to determine what work he shall do and what means he shall employ to do it, ordinarily is not enough. But where the work to be done is the borrower's work, and a part of his business, and he has the power and authority to direct when and where and how it shall be

done, and where the work is not within the scope of the general employment of the servant, it may fairly be said that so far as that work is concerned he is under the control of the borrower and that the latter will be responsible for his negligent acts. *Standard Oil Co. v. Anderson,* 212 U. S. 218.

Applying those principles to the facts before us, it would be difficult for us to say as a matter of law that the driver of the Herwig automobile was not so far under the control of Dippel as to make him answerable for his negligence. He had the right to select the route he was to follow, the persons he was to carry, the position he was to take in the procession, and the speed at which he was to drive, and whatever was done in obedience to directions given in the exercise of that right was done for him and in the performance of a contract which he had made. Upon somewhat analogous facts, it was held in *Sacker v. Waddell, supra; Amer. Sugar Refin. Co. v. Gilbert,* 145 Md. 251; *Hooper v. Brawner, supra,* and *Brawner v. Hooper, supra,* that the question of whether the owner or the borrower was responsible for the negligence of a servant in the general employment of the owner was for the jury, and in *Salowitch v. Kres, supra,* it was held, upon facts not wholly dissimilar, that as a matter of law the chauffeur was the servant of the borrower and not of the owner, and in our opinion in this case the question was at least one for the jury. The essential and vital distinction between borrowing cases such as this, and the hiring cases cited by appellant, is that in the former, ordinarily, the servant is not engaged upon his master's business, while in hiring cases he ordinarily is.

But the plaintiff's right to recover against the appellant rests upon an even stronger ground. It may be inferred from the record that Dippel contracted with Mrs. Juliano to transport her to the church, and to the cemetery, and as a necessary incident of that contract he was bound to use ordinary care and prudence to provide a reasonably skillful and prudent driver, and a safe vehicle, and he could not evade that

liability by employing an independent contractor without the knowledge or acquiescence of the plaintiff, nor could he escape liability on the ground that the agent employed by him to perform that contract was loaned to him by another. It may be inferred from the evidence that Dippel failed to perform that duty, and therefore the appellee's claim against him rests primarily upon his breach of the contract made with her. 38 *C. J.* 92. Dealing with somewhat similar facts, the court in *Radel v. Borches,* 146 Ky. 506, 39 L. R. A. (N. S.) 228, said: "It is a matter of common knowledge that, in the distressing surroundings of this nature, some one of the family, or some friend of the family, acts for all; and it is right that the obligations, whatever they may be, assumed or owed by the undertaker, should be held as contract obligations owed to all. * * * The rule is clear beyond argument that one who undertakes by contract to do for another a given thing cannot excuse himself to the other for a faulty performance, or a failure to perform, by showing that he engaged another to perform in his place, and that the fault or failure is that of another, or independent contractor." And to the same effect is *Mahoney v. Kansas City Rwys.* (Mo.), 254 S. W. 17.

This brings us to the rulings of the court on the prayers. The only rulings to which the appellant objected in this court, were the refusal of his demurrer prayer, the modification of his second prayer, and the granting of the fifth prayer of the defendant Herwig, who was sued jointly with appellant. For reasons already stated, we find no error in the refusal of the demurrer prayer, nor is it apparent how appellant could have been injured by the modification of his second prayer. As offered, it relieved Herwig from liability for the driver's negligence only in the event that he "completely" surrendered "all" control over him to Dippel, while as modified it relieved him from such liability if he surrendered "control" over the driver. The prayer as offered, by the emphasis placed upon the words "all" and "completely," was likely to confuse and mislead the jury, and as the law stated in the prayer as modified is consistent with the deci-

sions of this Court, and fairly submitted to the jury the theory upon which the prayer as originally offered was based, we find no error in that ruling, especially since the court, in granting Herwig's third prayer, in substance told the jury that in order to excuse Herwig from liability for the driver's negligence they must find that he surrendered control over the driver, "so that he could not exercise any control over him."

Nor do we find any reversible error in the action of the court in granting Herwig's fifth prayer. The prayer was equivocal, and might well have been clearer, but its apparent import was that if Dippel assumed and exercised the right to direct and control the driver in the "duty for which he had been hired," that he was responsible for his negligence. While that proposition appears to be sound, it was obscurely phrased and the prayer should have been refused, but we are unwilling to reverse the case on that ground alone, because it seems highly improbable that if the jury understood the prayer at all they were misled by it. Since no objection to the other rulings was pressed in this court, it is sufficient to say that we have found no reversible error in them, and the judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*