BALTIMORE TRANSIT CO. *v.* STATE, USE OF
CARRIE SCHRIEFER, ET AL
KATHERINE BAUERNFEIND *v.* SAME

[Nos. 74-75, October Term, 1944.]

*Decided January 10, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*Philip S. Ball* and *Eben J. D. Cross,* with whom was *Joseph R. Hudson* on the brief, for the appellant, Baltimore Transit Company.

*Paul F. Due,* with whom were *Due, Nickerson & Whiteford* on the brief, for the appellant Bauernfeind.

*Michael J. Manley,* with whom were *Julius A. Victor, Jr., Peter J. Flynn* and *Harley, Whettle & Manley,* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is a suit on behalf of the widow and five infant children of the late Charles Schriefer, of Baltimore City, who was fatally injured in a collision between a street car and a truck on Linden Avenue in said city on February 26, 1942. The claim is for damages resulting to the equitable plaintiffs (the appellees) from the alleged negligence of the motorman of the street car and of the driver of the truck. The case was submitted to a jury on this issue of negligence, as to both operators, and also on the issue of whether the truck driver at the time of the accident was the servant of the defendant, Kath-

erine Bauernfeind, who owned the truck, or of the Mayor and City Council of Baltimore, the hirer of it. The jury returned a verdict for $25,200 against the Baltimore Transit Company and Mrs. Bauernfeind jointly, and from the judgment on this verdict each of said defendants has appealed, the cases being embodied in one record.

The deceased, Charles Schriefer, was an employee of the City of Baltimore and, in due course, claim for compensation was made under the Workmen's Compensation Act, Code 1939, Art. 101, Sec. 1 et seq. The State Industrial Accident Commission thereupon, on March 10, 1942, ordered the Mayor and City Council of Baltimore, as employer and self-insurer, to pay Schriefer's widow and children $17.41 weekly for 287⅖ weeks, not to exceed $5,000, and funeral expenses not to exceed $125. The city not having filed suit within two months after the passage of this order, as it had a right to do under the statute (Sec. 72, Art. 101, Code), to collect the amount of this compensation, the present action was brought by these equitable plaintiffs under authority of this same statute to enforce the alleged liability of the above-named defendants as joint tort-feasors, without joining the city but making reference to the compensation award. During the progress of the proceedings in the trial court the Baltimore Transit Company filed a petition to make the Mayor and City Council of Baltimore a third party defendant on the ground that the truck driver, George H. Bivens, was acting as the agent and servant of the city at the time of the accident. The petition directed the Court's attention to the allegation of the narr: "that the said George H. Bivens was an agent and servant of the said Katherine Bauernfeind." The Transit Company then immediately went on to state its own position on this issue by the next paragraph in its petition, as follows:

"(2) Investigation discloses that, while the said George H. Bivens was paid by the said Katherine Bauernfeind, he was at the time of the accident referred to an agent and

servant of the Mayor and City Council of Baltimore, having been transferred to its service by mutual arrangement and being, throughout his daily work, subject exclusively to its direction and control. The Mayor and City Council of Baltimore, as principal, is consequently responsible for any negligent act on the part of the said George H. Bivens as its agent and servant which directly contributed to the accident referred to in the said declaration, he having been acting in the course of his employment at the time and place designated.

"(3) That the Mayor and City Council of Baltimore is not mentioned as a party defendant in this cause whereas it may be liable as a joint tort feasor to The Baltimore Transit Company, one of the defendants, or to the equitable plaintiffs, for all or part of the claim against your petitioner as a defendant."

This petition of the Transit Company was granted but subsequently was rescinded, and on appeal to this court, the rescinding order was affirmed. *Baltimore Transit Co. v. State, to Use of Schriefer, etc.*, 183 Md. 674, 39 A. 2d 858. The ground of the decision in that case was that the Mayor and City Council of Baltimore, as an employer complying with the award of the State Industrial Accident Commission, was liable exclusively under the Workmen's Compensation Act, and that the Joint Tort Feasors Act (Art. 50, Secs. 21-30 of the Code 1943 Supp.), which the Transit Company sought to invoke, was not applicable.

The Mayor and City Council of Baltimore having been thus eliminated as a party to the case at bar, and the truck driver, Bivens, who was named as one of the original defendants, not having been summoned, the case proceeded to trial against the two remaining defendants, the appellants here. The verdict of the jury being against them jointly, their separate appeals to this Court are on opposing grounds and furnish the principal controversy here.

The Transit Company bases its appeal (No. 74) on the ground (a) that there was no legally sufficient evidence

of primary negligence for submission to the jury as to the motorman of the street car (appellant's A prayer), it being claimed that the truck driver's negligence directly and proximately caused the accident; (b) that from the uncontradicted evidence the deceased was guilty of contributory negligence as a matter of law (appellant's B prayer) ; and (c) that the question of whether or not the truck driver, Bivens, was the servant of Mrs. Bauernfeind at the time of the accident was a question for the jury and that it was properly submitted.

In her defense to this suit the appellant in No. 75, Mrs. Bauernfeind, takes the position, in effect, that she is completely absolved from any liability because, even though negligence on the part of the truck driver, Bivens, may have caused the accident, he was not her servant or agent at the time. Her whole defense is based on this point and the argument of her counsel was confined to the trial court's rulings concerning it. The assignments of error were the Court's refusal of her demurrer prayers, of her special exception to the court's charge and the refusal of her motion for a judgment n. o. v.

In addition to the exceptions above indicated, as taken by each of the appellants, there were certain exceptions to rulings on the evidence. These latter, however, were not pressed at the argument and may be considered as waived. It is relevant to observe, however, that the Court has considered these rulings and finds no reversible error in any of them.

In passing upon the substantial and controlling questions involved in these appeals, the first are those presented by the demurrer prayers, namely, in No. 74, (a) Should the case have been submitted to the jury as to primary negligence on the part of the motorman of the street car? (b) As to the contributory negligence of the deceased? and, in No. 75, As to whether or not the truck driver, Bivens, was, as a matter of law, the servant of Mrs. Bauernfeind at the time of the accident? These questions call at once for a review of the facts of the case.

256

As disclosed by the record, these facts plainly show that this was not an unavoidable accident. In broad daylight, about noon, just off a curve and on the slope of a prominent and busy street, the use of which called for the exercise of commensurate care, and when the motorman of a street car and the driver of a truck, approaching from opposite directions, had a clear and unobstructed view of each other for at least 150 feet, they so operated their respective vehicles that they came together in a collision which caused the death of a man who was riding on the running board of the truck.

Going further into the facts, it is shown that this truck happened to be on this particular street (Linden Avenue) at that time as a part of its route for the collection of ashes for the City of Baltimore. It was bound south from Preston Street in the direction of Biddle Street, and had as its immediate destination or point of call for ash containers a small intersecting street or alley known as Camel Street. This intersection is, according to the plat filed in the case, 180 feet from the corner of Biddle Street. There are two car tracks, northbound and southbound, on this part of Linden Avenue, which is 39 feet from curb to curb, and the truck was slowly operating along the west side of Linden Avenue preparatory to crossing over to the east side and into Camel Street or alley, which is but 11 feet 9 inches in width. This truck was owned by the appellant, Mrs. Bauernfeind, and the driver of it, George H. Bivens, was her employee. However, under an oral agreement with Baltimore City officials, she had hired this truck, together with said driver, to the city for $2 an hour, and at the time in question both the truck and the driver were engaged in the city's business of collecting ashes. On the truck with Bivens were three city employees, all constituting the "crew" of the truck.

As the vehicle approached Camel Street one of the crew, Edward McCurdy, picked up a small container of ashes, threw it up to the top man, Charles W. Lee, and the truck proceeded very slowly on its way without

stopping, the objective being the opposite corner of Camel Street, which was on the east side of Linden Avenue. According to McCurdy, it was when the truck had partly made the turn across Linden Avenue that he first noticed the "nose" of the street car coming around the curve from Biddle Street into Linden Avenue. At that point and down to Camel Street there is a three per cent. grade. McCurdy's estimate of the distance between the two vehicles at that time was "approximately 150 or 160 feet." He said he was running alongside of the truck and stepped on the running board as it was making the turn into Camel Street. Continuing, he testified, "In the next second I glanced up he was right on top of us and I jumped away on the southeast corner." Previously, McCurdy had testified, "As we were nosing into the alley I glanced up again and instead of slowing up he (the motorman of the street car) apparently speeded, and in the matter of seconds he hit us."

In the progress of the truck as it was making its turn from one corner to the other of Camel Street, across Linden Avenue, and in the operations of the business of collecting ashes, the deceased, Schriefer, was standing directly behind McCurdy on the right running board of the truck. McCurdy jumped off the running board in time to save his life but Schriefer did not. The street car hit the truck just behind the cab portion of it and knocked it an estimated distance of about two feet.

The version of the accident as given by the driver of the truck, Bivens, was that he was proceeding very slowly, "possibly between two and three miles per hour," south on Linden Avenue with the intention of making a left turn into Camel Street; that before he began to make the turn he saw a street car at the top of Biddle Street and Linden Avenue "just making the turn." In answer to the question "How far was the street car away from you at the time you made this turn and went over on the north-bound car tracks?" he answered: "Oh, I would say 150 to 160 feet away from it."

The testimony of the motorman, and corroborated by other witnesses, was that "when I was about fifteen feet from Camel Street I saw this truck turn right in front of me" and that the driver gave no hand signal at any time. (It is to be noted, also, that the motorman did not claim he sounded his gong or gave any kind of warning as he approached Camel Street, and Bivens and other witnesses testified that there was no such warning sound from the street car.)

Without detailing any further the testimony on the question of negligence of the truck driver, Bivens, in attempting to cross in front of an on-coming street car under the circumstances related in the record, it is sufficient to say that there was abundant testimony on this aspect of the case for submission to the jury. However, as this is not directly an issue in the case, as the record now stands, its relevancy in connection with the determination of the Transit Company's appeal is only to the question of negligence, *vel non*, of the motorman of the street car. The Trial Court ruled that the evidence on that point, likewise, was legally sufficient to go to the jury, and it is this ruling on the appellant's A prayer which presents the first question for decision on the appeal in No. 74.

The principles of law applicable to a question of this kind are so elementary, and in the case at bar so well agreed upon by the learned counsel, that they require little, if any, elaboration. The jury were left free by the Trial Court, under a charge which was not excepted to by this appellant, to consider, weigh and determine this issue of negligence on the facts before them and to do so under admittedly correct instructions as to the law. However, the appellant, the Transit Company, contends on this appeal that the trial judge committed reversible error in submitting the case at all to the jury as to primary negligence on the part of its motorman. Its demurrer prayer and its motion n. o. v., counsel argue, should have been granted. In support of this argument they cite numerous cases to the effect that unless there be

some evidence of negligence, beyond a mere scintilla, or evidence from which negligence may be legally inferred, there is nothing which calls for the submission of the case to the jury. *Casparis Stone Co. v. Boncore*, 121 Md. 449, 88 A. 250; *State, to Use of Silver, v. P., B. & W. R. Co.*, 120 Md. 65, 87 A. 492; *Hagerstown & Frederick R. Co. v. State*, 129 Md. 318, 99 A. 376; *State, to Use of Foy, v. P., W. & B. R. Co.*, 47 Md. 76, and other cases.

This appellant cites also, and relies most strongly upon, the case of *Fillings v. Diehlman*, 168 Md. 306, 177 A. 400, wherein it was decided that in the absence of proof of the speed of a street car and of other essential elements for inference of negligence, the case was properly withdrawn from the jury. As to the authority of the cases cited and the correctness of their enunciation of the legal principles involved there can be no dispute. The only possible difficulty is in determining, as a matter of law, whether in the instant case the record shows any facts on the point of the motorman's alleged negligence about which ordinary minds might differ. If any such evidence does appear, then, according to the very authorities invoked by the appellant, it would be within the province of the jury, and not of the court, to weigh and pass upon it. Where the evidence of negligence is contradictory, or is of such a character that reasonable persons may differ as to its amounting to proof of such negligence and that it contributed to the accident, the case is one for the jury to determine and it would be error to withdraw it from their consideration. *Jenkins v. B. & O. R. R. Co.*, 98 Md. 402, 56 A. 966; *Lake Roland El. Ry. Co. v. McKewen*, 80 Md. 593, 31 A. 797; *Cooke v. Baltimore Traction Co.*, 80 Md. 551, 31 A. 327; *Baker v. Maryland Coal Co.*, 84 Md. 19, 35 A. 10.

The inquiry becomes, therefore, what evidence, if any, is there of the motorman's negligence as to which reasonable persons might differ? Consider, first, the motorman's own testimony,—bearing in mind the undisputed fact that from the instant the street car rounded the gentle curve from Biddle Street into Linden Avenue at

the top of a 3 per cent. grade, he had a clear and unobstructed view of that part of Linden Avenue being traversed by the Bauernfeind truck as it slowly approached, the intersection of Camel Street at 180 feet from the corner of Biddle Street. According to the motorman, the truck, when he first saw it, was moving in the southbound car track, "there was somebody standing on the left running board, one on each side of the truck when I saw it." He later testified that "I couldn't see the man on the left side after the truck started to turn. I don't know what happened to him." The turn was made, he said, "across in front of me" when the street car was only 15 feet from Camel Alley. Therefore, the verbal picture his testimony gave to the court was that of a 42,000-pound street car advancing down-grade in one car track, and a large dump truck with a man standing on the running board on each side coming slowly toward him in the other car track and approaching a street or alley intersection. Although the motorman maintained that his car was not then going "over twelve miles an hour," the speed having been accelerated from 8 to 12 miles per hour from the top of the grade, and that he "shoved the car in emergency and immediately got two brakes," he followed this testimony by the statement that "in the excitement I wouldn't know whether they did or didn't click."

Two witnesses for the appellees had testified that shortly after the accident they heard the motorman say that he had applied his brakes but that they didn't "click." The latter denied that he had made any such statement, but taking this conflicting testimony into consideration, along with the fact that the two vehicles did actually come together under the circumstances pictured by the motorman, himself, the trial court was fully justified in leaving to the jury the question as to whether the street car was negligently out of control or out of repair, thereby contributing to the accident.

Even stronger reasoning in support of that ruling is to be found in the conflict of testimony as to the speed

of the street car as it came down the grade from Biddle Street to Camel Alley. As tending to show negligence in this respect there is the following testimony in the record, the credibility of which was exclusively for the jury to determine: That of Edward A. McCurdy, hereinbefore mentioned, that, as the truck was "nosing into" Camel Alley, the street car, instead of slowing up, "apparently speeded and in the matter of seconds he hit us"; that of Mrs. Sarah Rotkovitz that she was looking out the bow window of her house on the east side of Linden Avenue close to the corner of Camel Street when she saw the street car making its turn from Biddle Street into Linden Avenue, and "coming down at a terrific speed. I kept my eyes on the car the whole time until I heard the noise and the window got dark" (from the spray of ashes); also, that of the witness John F. McIntyre, a passenger on the street car at the time of the collision, that just as the truck was straightening out across Linden Avenue to make a "direct hit" into Camel Alley, the "trolley car put on full speed," that as the motorman started putting on the brakes and was within 50 feet of the truck "whether he lost himself or not, I don't know, but the car started with a wild rush." After the collision this witness testified that he heard the motorman say, in response to a question from the truck driver, Bivens, "I'm wrong. I will probably lose my job," he says, "but my brakes didn't click."

All this testimony amounted to more·than a mere scintilla of evidence on the question of excessive speed, and in that respect, alone, differentiates the case at bar from the case of *Fillings v. Diehlman, supra,* where there was no proof at all of the speed of the street car. The Transit Company's demurrer, or A, prayer in the instant case was, therefore, properly refused.

As to the question of the alleged contributory negligence of Charles Schriefer, the appellees' decedent, raised by appellant's B prayer, we find no evidence of such a distinct, prominent and decisive act on his part as would have justified the trial court in withdrawing the case

from the jury on that issue. That Schriefer was on the running board of the truck, and that he did not see the on-coming street car in time to have jumped off, as McCurdy did, before the collison, cannot be said to constitute negligence as a matter of law. See *Jenkins v. B. & O. R. R.*, supra, 98 Md. at page 405, 56 A. 966; *Baur v. Calic*, 166 Md. 387, 396, 397, 171 A. 713. The jury might well have believed, as their verdict indicated, that his position there was an accustomed, if not a necessary, part of the routine operations of his task as a helper in ash collecting, and that his vision of the street car on the opposite track was obstructed by the cab of the truck and by McCurdy's body immediately in front of him. It was but reasonable for him to have assumed that a street car would not have headed into a collision, even at close range, without sounding a gong or giving warning of some kind, and also for him to have assumed, more especially, that the driver, Bivens, would not have abruptly turned into the path of danger.

Regardless of the cause of this collision, it is clear from all the circumstances surrounding it that the question of the deceased's contributory negligence was one for the jury and that, therefore, appellant's B prayer was properly refused. *Philadelphia, W. & B. R. R. Co. v. Anderson*, 72 Md. 519, 20 A. 2, 8 L. R. A. 673, 20 Am. St. Rep. 483; *Maryland Ice Cream Co. v. Woodburn*, 133 Md. 295, 105 A. 269; *Taxicab Co. v. Emmanuel*, 125 Md. 246, 93 A. 807; *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 148 A. 426; *Strauss v. United Rys. & Electric Co.*, 101 Md. 497, 61 A. 137; *Baur v. Calic*, supra.

It follows that for the reasons above stated, the denial of appellant's motion for judgment n. o v. was, likewise, correct, and that on the whole case the judgment appealed from should be affirmed.

## The Appeal in No. 75.

We come now finally to the consideration of the appeal of the owner of the truck, Mrs. Bauernfeind, the appellant in No. 75. The position taken by her is that, irrespective of the question of whether or not her driver, Bivens,

was negligent, she is not liable because at the time of the accident he was not her servant but was the servant of the hirer, the Mayor and City Council of Baltimore. The trial judge ruled that that was, also, a question for the jury to determine and, therefore, refused her demurrer prayers and also her prayer ("5th") to the effect that, even though she had the right to hire and discharge Bivens, that right was not an essential element in deciding the question of her liability. That question, she contends, is one that depends upon who had the "direction and control" of the driver at the time mentioned.

The record shows that in passing upon this fifth prayer, along with her third and fourth on the same general subject of "direction and control," the trial judge stated that he would incorporate the substance of them in his charge to the jury. The appellant claims that he did not do so and that the right to hire and fire was stressed "unduly and unfairly" to the appellant. This was the basis of the special exception taken to the Court's charge.

In considering this appeal, in so far as the rulings on the demurrer prayers are concerned, it is of first importance to bear in mind that it is not the function of the court to weigh the evidence on the master and servant relationship, but is, rather, to decide whether there is any evidence at all legally sufficient to prove that that relationship existed between Mrs. Bauernfeind and her truck driver, Bivens, at the time of the accident in question.

The relevant facts shown by the record on this aspect of the case are: that for about twenty years Mrs. Bauernfeind had been renting to the City of Baltimore trucks (with driver) for use in the garbage or ash department, "whatever they wanted to use it for. I never—I would know," she testified, "when the driver would come back, he would say what he was doing but not any particular work"; that she employed this particular driver, Bivens, on the recommendation of the Supervisor of the Bureau of Street Cleaning, Mr. Leon A. Wilson, and that Bivens

operated the truck only in the ash department; that she paid his wages and also supplied the gasoline and the necessary upkeep of the truck; that she, alone, had the right to discharge Bivens; that when the city wanted her truck she would get a letter from the Department calling for it; that she would give Bivens this letter and he would report accordingly to the foreman at the city stable designated; that when she sent him to the job she always told "any of them" to be careful and do the right thing, "and that was all I would tell him"; that she gave Bivens the key to the garage and the truck and "sometimes I wouldn't know when he was going. He wouldn't come in, only at night, and bring me the tickets"; that when Bivens reported to the city for duty each morning, the foreman at the stable, identified as Mr. Wilson above mentioned, would give him the route and he (Bivens) would drive the truck wherever he was told to go; that the instructions given by Foreman Wilson to the crew of the truck, consisting of three city employees and Bivens, were that he wanted the ashes gotten up in the area between Lanvale and Biddle, Eutaw and Mt. Royal, and that they were to go out and collect them; that the foreman also instructed the crew, which included Bivens, as to how the truck should be operated in regard to safety; that of the four men on the truck there was really no "boss" or any one in charge, except that the oldest man in point of service, McCurdy, was expected to make any decision as to deviation of route, etc., and that Bivens and the other two generally took orders from him; that if any chauffeur, such as Bivens, proved to be unsatisfactory, warning would first be given to him and then, "if he didn't straighten himself out," the owner would ultimately be notified to furnish another chauffeur or else have the city discontinue the use of that particular truck; that according to the witness, George H. Elliott, Jr., the head man in charge of the operating management of the Bureau of Street Cleaning, the city not only did not have the right to employ or discharge any chauffeur on these hired trucks but "we (the City) had no jurisdiction over them."

In passing upon the particular issue now before us, we are confronted, first of all, with the presumption of law that an owner who furnishes a vehicle, together with a driver to operate it, is responsible for the driver's negligence. However, it is equally well established that this presumption may be rebutted, for a master may so hire or loan his servant to another for some special service, as that he will, as to that particular service, become the servant of such third person. *Sacker v. Waddell,* 98 Md. 43, 56 A. 399, 103 Am. St. Rep. 374.

If a master parts with the power of control and direction over a servant, and the latter becomes engaged in another's work beyond the scope of the servant's general employment, it may be fairly said that, as a general rule, the master would be relieved from liability for his employee's negligence while on that special assignment. Whether or not the circumstances of a given case are legally sufficient to overcome the presumption against the master or owner is ordinarily a question for the jury, but where the rebutting testimony is uncontradicted, it becomes one for the court to determine as a matter of law.

The rule above indicated is that to be deduced from the authorities on this branch of the law, as interpreted or pronounced in the various Maryland cases which have dealt with it, notably the following: *Sacker v. Waddell,* supra; *Bentley, Shriver & Co. v. Edwards,* 100 Md. 652, 60 A. 283; *American Sugar Refining Co. v. Gilbert,* 145 Md. 251, 125 A. 692; *Salowitch v. Kres,* 147 Md. 23, 127 A. 643; *Hooper v. Brawner,* 148 Md. 417, 129 A. 672; *Brawner v. Hooper,* 151 Md. 579, 135 A. 420; *Vacek v. State,* 155 Md. 400, 142 A. 491; *Hilton Quarries, Inc., v. Hall,* 161 Md. 518, 158 A. 19; *Baur v. Calic,* 166 Md. 387, 171 A. 713.

The cases resolve themselves into two general classes: (1) where the owner loans, or transfers on a gratuitous basis, his vehicle with driver; and (2) where, as a part of his business, the owner hires them to another. The test under both classifications is to determine who had the power of "direction and control" at the time in ques-

tion. In applying this test the difficulty is to decide what is meant by that term, for it is open to varying constructions depending upon the facts of each case. As pointed out in the case of *Dippel v. Juliano*, 152 Md. 694, at page 700, 137 A. 514, at page 517, which is typical of the former class: "The essential and vital distinction between borrowing cases, such as this, and the hiring cases cited by appellant, is that in the former ordinarily the servant. is not engaged upon his master's business, while in the hiring cases he ordinarily is." Again, in that case (pages 699, 700 of 152 Md., at page 517 of 137 A.), it is indicated that it is only where the specially assigned work "is not within the scope of the general employment of the servant" by the master or owner that it could be fairly said that the latter had surrendered "control" to such an extent as to relieve him of liability for the driver's negligence.

Typical of the other, or hiring, class of cases is *Bentley, Shriver & Co. v. Edwards, supra,* of which this Court significantly said in *Salowitch v. Kres, supra,*—a case where the owner of an automobile had loaned it and also the driver, his general servant, to another for use in that other's business, wholly apart and distinct from the business of the owner: "The class of cases represented by *Bentley, Shriver & Co. v. Edwards* is totally different from the present case, and the principles therein laid down have no application, because in that case the truck belonged to, and the driver was in the general employ of, the master, whose business it was to hire trucks and drivers to the general public, but, while engaged in such services, were directly furthering the general master's businss." [147 Md. 23, 127 A. 646.]

In the Bentley, Shriver & Co. case, supra, the owner of a truck agreed to furnish it and also the driver thereof to the defendants for a certain weekly sum and the driver was directed by his employer to do the work the defendants required. The only directions he received from defendants was to carry goods from one place and unload them at another. In refusing the defendants' de-

murrer prayer, offered on the theory that the driver had become a fellow-servant with defendants' other employees, the court concluded that the evidence did not disclose any special circumstances to overcome the presumption that the driver, while doing the hauling in question, remained the servant of his general employer and was such at the time of the accident. This affirms the general rule and presumption of law, above referred to, that when one furnishes to a hirer a vehicle, and also the driver thereof, such driver remains the servant of the owner with whom his contract of employment was made. It is to be noted, too, that this presumption is rebuttable only by uncontradicted testimony. *Cyc. Auto Law & Prac.*, Perm. Ed., Vol. 9; *Blashfield*, Sec. 6057; *Salowitz v. Kres, supra.*

Reverting to the case of *Dippel v. Juliano, supra,* which is illustrative of the other, or "borrowing" classification, and relied on most strongly by the appellants here, we find a factual situation which distinguishes it from the case at bar. There, an undertaker, Dippel, had made a contract with the family of a deceased to conduct funeral services. Dippel borrowed a limousine, with driver, from one Herwig, and a daughter of the deceased was injured in a collision between that limousine and a street car. She sued both Dippel and Herwig, and recovered a judgment against Dippel only. The question on that appeal was confined to the liability of the borrower of the automobile, who had assumed actual control over the car and its driver for the purpose of carrying out the borrower's contract for conducting a funeral.

The court decided that the plaintiff was entitled to recover against Dippel on two grounds: (1) that the negligent driver of the limousine was Dippel's servant and was not then acting within the scope of his general employment by Herwig; and (2) that there was a breach of contract of carriage with the deceased's family. Referring to the first of these two grounds the court ruled that the question was "at least one for the jury." On the issue of "control" the court, through Judge Offutt, said: "Evi-

dently full dominion and control is not necessary, for that would imply the right to hire and discharge, and that is nowhere regarded as essential, while the mere right to point out and direct the servant as to the details of the work and manner of doing it, leaving to the servant or his general employer the right to determine what work he shall do and what means he shall employ to do it, ordinarily is not enough. But where the work to be done is the borrower's work and a part of his business, and he has the power and authority to direct when and where and how it shall be done, and where the work is not within the scope of the general employment of the servant, it may fairly be said that so far as that work is concerned he is under the control of the borrower and that the latter will be responsible for his negligent acts. *Standard Oil Co. v. Anderson,* 212 U. S. 218." The Court declined to rule, as a matter of law, that the driver of the Herwig automobile was not so far under the control of Dippel as to make the latter answerable for his negligence, but said that was an issue for the jury to determine.

The question for final decision on this appeal is, therefore: In which of the two classifications of cases does the instant case belong? The principles governing the one do not apply altogether to the other, for the scope of the servant's employment is a distinguishing factor. With this in mind, a consideration of the facts of the case before us clearly shows that it belongs in the "hiring," and not in the "borrowing," class. From the record we find that Mrs. Bauernfeind had, for some twenty years, been renting trucks, with driver, to the city of Baltimore. There was nothing in writing to evidence the contract but "the city just hired the truck at so much per hour," which was to include the chauffeur, the necessary oil and gas, and the keeping of equipment in proper shape. This particular chauffeur, Bivens, was sent to Mrs. Bauernfeind by one of the city's foremen connected with the ash department, and was employed by her for the special purpose of operating this truck in

furtherance of her verbal contract with the city, that is to say, in furtherance of her own business. Bivens was merely recommended to her by the foreman, Wilson, and she had the right to employ him or furnish any other chauffeur for her truck engaged by the city. She was paid on an hourly basis of $2 for the truck and driver, and if either proved unsatisfactory the responsibility was solely hers and she, alone, had the right to discharge Bivens or to withdraw him from his assignment to the city job of ash collecting.

The truck was kept in Mrs. Bauernfeind's garage, to which she gave Bivens the keys, and as a part of his employment he called at the garage each morning, drove it to the city stables to engage in work previously contracted for between his employer, Mrs. Bauernfeind, and the hirer (city)—that is to say, to operate the truck for the collection of ashes by the city. Each night the truck would be returned to Mrs. Bauernfeind's custody with slips showing the time put in to her credit. On the other hand, the outstanding facts are that when Bivens arrived at the city stables each morning he reported for work to the foreman there, was told by him what route to take, etc., in accomplishing the general task of collecting and dumping ashes, which was a part of the city's business.

From the aforegoing summary of facts, it is apparent that certain legitimate inferences might be drawn from them by a jury to support the conclusion that Bivens was still Mrs. Bauernfeind's servant within the meaning of the rule and that the presumption of her liability for his alleged negligence had not been overcome by uncontradicted testimony. *Salowitz v. Kres*, supra. As stated by Judge Offutt in *Dippel v. Juliano*, supra: "And where upon the evidence that fact (of the power of control and direction) depends upon the adoption of one or more of varying but nevertheless legitimate inferences which may be drawn from conceded or undisputed facts, or from the existence of disputed facts, the question is usually one for the jury."

270

The trial court's refusal of the appellant's demurrer prayers was, therefore, correct.

The last point raised for decision on this appeal is the appellant's special exception to the court's charge to the jury, as hereinbefore pointed out. The basis of this exception is, in substance, that the court unduly stressed the right to "hire and fire," instead of putting the emphasis where the appellant claims it belongs, namely, on the "power of control and direction" of the driver Bivens. It is claimed, further that the right to hire and discharge is not essential to direction and control and that the court was "misleading" in its statement to the jury that the plaintiff might recover "provided the jury find that Bivens was a servant of Mrs. Bauernfeind." "The reference should have been," the exception notes, "to whether or not she had supervision and control over him at the time, or whether the city had it." The case of *Dippel v. Juliano*, supra, is relied on by the appellant to support this special exception.

In that case, however, as heretofore pointed out, the question of liability was not that of an owner who was in the business of hiring an automobile and driver in furtherance of a contract but was, rather, that of a borrower whose business took the driver completely away from the scope of his general employment by his master. In the latter kind of a case the right to hire and discharge was clearly not essential, and that is as far as the court's ruling went in that connection. It can have no application to the class of hiring cases to which the instant case belongs, for here the power to discharge may very well be an element important, even if not essential, to be considered by the jury in determining the issue of power of control and direction.

On this point the following quotation in *Vacek v. State,* supra [155 Md. 400, 142 A. 494], from 39 C. J. 35, is enlightening: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not

only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the existence of the power to discharge is essential, and is an *indicium* of the relationship."

There is not only no conflict in the respective definitions given in the Vacek and the earlier Dippel case, but a comparison of them serves to emphasize the point that the definition in the latter simply had reference to its own type of case and not to one where the jury might reasonably infer that the servant was acting within the scope of his master's business of hiring trucks and driver,—which is precisely the issue here.

Taking into consideration all the facts and circumstances of this case and viewing the trial judge's charge in its entirety, we are of the opinion that his summation of the law was substantially correct and unprejudicial. Finding no reversible error in any of the exceptions, the judgment in this case, as in No. 74, will be affirmed.

*No. 74, judgment affirmed, with costs.*

*No. 75, judgment affirmed, with costs.*