NORTHWESTERN NATIONAL INSURANCE
COMPANY *v.* SAMUEL R. ROSOFF, LTD., ET AL.
HOME INSURANCE COMPANY *v.* SAMUEL R.
ROSOFF, LTD., ET AL.
(Two Appeals in Separate Records)

[Nos. 163-164, October Term, 1949.]

422

*Decided May 17, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON and HENDERSON, JJ.

*A. Frederick Taylor,* with whom were *Harry W. Allers* and *Allers & Cochran* on the brief, for the appellant, the Northwestern National Insurance Company.

*Charles Markell, Jr.,* with whom were *Clayton A. Dietrich* and *Cook, Ruzicka, Veazey & Gans* on the brief, for the appellant, the Home Insurance Company.

*Donald N. Rothman,* with whom was *Simon E. Soboloff* on the brief, for the appellee, Samuel R. Rosoff, Ltd.

*F. Clifford Hane, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the appellee, the Mayor and City Council of Baltimore.

MARBURY, C. J., delivered the opinion of the Court.

These two cases are samples of 40 odd cases in which the same questions have been raised below. Appeals in the other cases are contingent, as to their completion, upon the decision in the cases before us. All of the cases are suits by homeowners against their insurance companies for damages to their premises alleged to have been caused by explosions in the period from February through July, 1948. The several insurance companies in each case filed motions to implead Samuel A. Rosoff, Ltd., a corporation, and the Mayor and City Council of Baltimore City, contending that the explosions occurred during the construction of a water tunnel in the City of Baltimore by the use of dynamite and other explosive materials by Rosoff, the contractor. The City and Rosoff were made third party defendants, declarations were filed against them by the insurance companies, and, thereafter, motions were filed by the City and Rosoff to strike out the orders impleading them. The motions in the two cases before us were heard by Chief Judge Smith in the Superior Court of Baltimore City. Other

similar motions in the other cases were heard by Judge Moser in the Court of Common Pleas, and by Judge Sayler in the Baltimore City Court. No opinions were filed in any of these cases, but two of the cases were removed to the United States Court and similar motions were heard there by Judge Chesnut who filed an opinion which will be hereafter referred to. All of the judges hearing all of the cases granted the motions to strike out the impleading orders, and appeals were taken in the cases in the city courts to this Court. The only two which have been perfected are the two now before us.

It may be noted that in some of the cases the plaintiffs also filed motions to strike out the impleading orders, but we are advised that these were all withdrawn with the exception of two. In case No. 163, the plaintiff did not file such a motion. In case No. 164, the plaintiff did, but later withdrew it in open court at the hearing.

The original suits are in contract, alleging that the plaintiffs were insured by their companies against explosions. The third party suits, which the defendants desired to have heard with the original suits, are in tort for damages done by the City and its contractor through the same explosions. The plaintiffs in these cases have not attempted to bring separate tort actions against the City or the contractor, but the insurance companies say that if and when they are found liable to the plaintiffs, and have to pay the damages, they will then become subrogated to the rights of the original plaintiffs against the City and the contractor, and, therefore, the question of who is ultimately to pay the damages, if any are found, should be settled in one suit as to each house or building damaged.

The theory of impleading third parties is an outgrowth of what was found to be a defect in the common law. There were frequent cases where it was necessary to give relief to a defendant when he had a genuine claim for exoneration against some person not a party to the suit. For example, when the payee of a note sued the

surety, and left out the maker. The first efforts to bring all the parties into one suit was the old remedy of "vouching" which started in the English land laws. If A sold land to B with a warranty, and C claimed the land belonged to him and sued B, then B could give A notice of the pendency of the suit and an opportunity to join in the defense. Whether he did nor whether he did not, a judgment against B would then be conclusive in a subsequent action against the vouchee both as to plaintiff's right to recover and as to the amount. This right was extended to chattels, and the theory of it has been generally applied to cover all claims for indemnity expressed or implied. Where the vouching-in remedy was used, there might still have to be two suits. There were other situations where vouching-in did not apply, such as cases where several people committed the same wrong against the plaintiff, but he elected to sue only one. Statutes were passed giving one tort feasor against whom a judgment had been obtained, the right to sue the others for contribution, but this still required two suits. Subsequently, other statutes were passed giving the one sued the right to implead the others. Without detailing further the history of the various efforts to give relief and to combine in one suit all parties whose rights arose out of the same matter, there was finally passed Federal Rules of Civil Procedure, rule 14, 28 U. S. C. A., which is the proto-type of our rule invoked in this case. It may be noted that the English third party procedure was started with the Supreme Court of Judicature Act of 1873, Chapter 66, paragraph 24(3) and paragraph 39 of the Consolidation Act of 1925, and that in the leading case of *Jasperson v. Dominion Tobacco Co.*, [1923] A. C. 709, it was held that actions of contract and actions of tort could be impleaded in the same case. The old remedy of vouching-in is discussed in *Consolidated Hand-Method Lasting-Machine Co. v. Bradley*, 171 Mass. 127, 50 N. E. 464, 68 Am. St. Rep. 409. For the general historical background, see 33 Columbia Law Review 1147, 19 Minn. Law Review

163, Moore's Federal Practice, 2 Ed., Vol. 3, paragraph 14.02, pages 407-409.

Our Rule 4 of the General Rules of Practice and Procedure, Part Two, III, is based upon Federal Rule 14. It will be found in the 1947 Supplement to the Annotated Code, pages 2042, 2043, and the explanatory notes on pages 2103-2105. The procedure outlined in the Rule was followed in the cases before us, and the questions we are now called on to decide are first the right of immediate appeal from the order striking out the impleader, and, secondly, if such an appeal is now permissible, did the trial court abuse its discretion? The appellees in each of the cases have filed motions to dismiss the appeals on the ground that they were prematurely taken, because the orders are not final judgments.

Article 5, Section 2, Code 1939, allows an appeal from any judgment or determination of any court of law in any civil suit or action. That has been construed to mean a final judgment or determination which settles the rights of parties. Thus in the early case of *Mitchell v. Smith,* 2 Md. 271, 274, which was an appeal from an order of the County Court consolidating two cases, the Court said that such an order was not a proper subject of appeal before trial, although it might form such a basis after the determination of the suit, the reason being that no right of the parties was finally settled by it. This rule has been generally followed, two of the latest cases being *Dermer v. Faunce,* 187 Md. 610, 613, 51 A. 2d 76, and *Goodman v. Clark,* 193 Md. 521, 69 A. 2d 496. The appellees contend that the orders appealed from do not deny the appellants the means of further prosecuting suits against appellees, as the orders complained of dismissed the third party complaints without prejudice. They further say that the right to implead is not absolute but is in the discretion of the trial court, and, therefore, the appellees have been denied no rights. Appellants, on the other hand, say that the orders appealed from terminate finally the present litigation between appellants and appellees, that it is a matter vitally affect-

ing them to be denied, as they have been, the opportunity to have the entire matter heard in one case, that there is a judgment for costs against them which satisfies the technical requirements, and that the third party litigation is a separate part of the case from the original litigation, and that, as to that part, there is a final determination. They further suggest the factual situation that as these original suits were not brought for more than a year after the explosions occurred, and the ensuing proceedings, although promptly taken, have consumed the balance of the second year, it is possible that if they have to try the cases without the appellees as parties defendant, it may readily happen that by the time the cases against them are finally determined and they are in a position to pay any judgments which may be obtained against them, their rights to sue the appellees will have expired by limitations, and they may, therefore, in fact, be deprived of their right to sue appellees, even in separate actions.

In the case of *Baltimore Transit Co. v. State to use of Schriefer*, 183 Md. 674, 39 A. 2d 858, 156 A. L. R. 460, which was a tort action, the Transit Company obtained an order making the Mayor and City Council of Baltimore a third party defendant. The City subsequently moved to strike out this order. This was granted, and the Transit Company appealed. The facts in the case were that an employee of the City, while collecting ashes, was struck by a street car and killed. His dependents filed a suit against the Transit Company. The Transit Company claimed that the truck with which the deceased was collecting ashes was being operated by a servant of the City, and that his negligence caused the accident. In that case the claim was under the Maryland Joint Tort Feasor Act, Chapter 344 of the Acts of 1941, Art. 50, sections 21 to 30 of the 1943 Supplement to the Code. The City had been paying the employee compensation under an award of the State Industrial Accident Commission, and we held that under such circumstances the Workmens' Compensation

Act limited the employer's liability, and, therefore, the City was not a proper party. In that case no question was raised as to the immediate right of appeal from the order of the court striking out the City, but we considered the question, and affirmed the order. In the case of *Standard Wholesale Phosphate & Acid Works v. Rukert Terminals Corporation*, 193 Md. 20, 65 A. 2d 304, a workman was injured while working in the hull of a vessel, and brought suit against the owner of the appliance which injured him. That owner, Standard, filed a third party complaint against Rukert, who employed the injured man, on the ground that it failed to provide him a safe place to work. Rukert had paid compensation in accordance with the Longshoremen and Harbor Workers Compensation Act, 33 U. S. C. A. § 901 *et seq.*, and it filed a motion to vacate the order allowing the impleading, claiming it was not liable in damages. The motion was granted and the appeal was taken from the judgment entered for costs in favor of Rukert. We held that under our construction of such Federal cases as had decided the question, Standard had no right of contribution from such a joint tort feasor, and, therefore, affirmed the judgment. In that case, also, no question was raised that the appeal was premature, because the order was not a final judgment.

Our Rule, as we have stated, is based upon the Federal rule, and there is, so far, only one case which has directly decided this issue. That is the case of *Baltimore & Ohio R. R. Co. v. United Fuel Gas Co.*, 154 F. 2d 545, decided by the 4th Circuit Court of Appeals. In that case the Court held that the order dismissing the third party complaint was not appealable because it was an interlocutory order and not a final judgment. Judge Dobie, delivering the opinion, said the problem of what constitutes, for the purpose of appeal, final judgment, is often difficult. Three cases are referred to in other circuits where the court, on appeal, considered the merits of a motion to implead, but none of these cases discussed whether the judgment on review was a final judgment.

One of the cases was *General Taxicab Ass'n v. O'Shea,* 71 App. D. C. 327, 109 F. 2d 671, from the District of Columbia, and the Court said that case was no authority, because, under the District rules, appeals were permitted to the Court of Appeals whenever it is made to appear to the Court that it will be in the interest of justice to allow them. The Court quoted Moore's Federal Practice, Vol. 1, page 749, stating that it was certainly an authoritative book. That text book said such an order would not be appealable, since it did not finally dispose of any of the rights of the defendant. It is interesting to note that Professor Moore in his second edition of Federal Practice, Vol. 3, paragraph 14.19, page 450, repeats the statement made in the first edition, and cites as authority for it, Judge Dobie in the *Baltimore & Ohio Railroad* case, *supra,* and a Colorado State case, *Burks v. Maudlin,* 109 Colo. 281, 124 P. 2d 601, The last mentioned case was decided on local rules respecting appeals, and the Colorado court found that such an order did not come within the exceptions named in these rules.

The sequel to the *Baltimore & Ohio* case is instructive. It was tried below without the United Gas Fuel Co. A judgment was entered against the Baltimore & Ohio, and a second appeal was taken. On that appeal the ruling declining to implead the United Gas Fuel Co. was considered by the court at some length. The ground of the refusal by the District Court had been that the third parties sought to be impleaded were citizens of West Virginia which was the state of the original plaintiff. Under these circumstances, the Circuit Court of Appeals, speaking through Judge Parker, (*Baltimore & Ohio R. Co. v. Saunders,* 4 Cir., 159 F. 2d 481), held that the United States Court would be without jurisdiction in the third party suit, and that the joining of these third parties would oust the jurisdiction of the court in the entire case, which had been based on diversity of citizenship between the plaintiffs and the Baltimore & Ohio Railroad. Had Judge Parker held differently, the result would have sent the case back for another

trial with Standard Fuel Gas Co. as joint defendants, thus not avoiding delay and needless multiplicity of actions, but creating delay and multiplying the actions. It is interesting to note that in a later case decided in 1948, the Circuit Court of Appeals for the Third Circuit, reversed a district judge who had dismissed a third party complaint, where one of the grounds for dismissal was that no diversity of citizenship existed between the plaintiff and the third parties. That court said that it was to be remembered that the type of third party suit under consideration is ancillary to the main action, and presupposes that the latter has met the jurisdictional diversity requirements. The Court said, citing a number of decisions to support its view, that if diversity of citizenship existed in the main action, it was not thereby ousted by bringing in a third party who had no diversity of citizenship with the original plaintiff. This decision is, therefore, directly opposite to that of Judge Parker in the Baltimore & Ohio case. This case, which is *Sheppard v. Atlantic States Gas Co. of Pa.*, 3 Cir., 167 F. 2d 841, was a direct appeal from the order dismissing the third party complaint, taken before the case had been tried. The point does not appear to have been made that the appeal was premature.

There are other Federal cases which have entertained similar appeals before trial without any suggestion that they were premature, and where it does not appear that the point was made. One of these is *Brown v. Cranston*, 132 F. 2d 631, 148 A. L. R. 1178, decided by the Circuit Court of Appeals for the Second Circuit in 1942, where the Court applied the New York law against joint tort feasors under *Erie Railroad Co. v. Tompkins*, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, and affirmed an order setting aside orders bringing in such third party defendants. In another case, *City of Philadelphia to Use of Warner Co. v. National Surety Corp.*, 140 F. 2d 805, decided by the Circuit Court of Appeals for the Third Circuit in 1944, the District Court's order granting a motion to dismiss a third party complaint

was affirmed because the complaint did not state a claim upon which relief could be granted. There is also a *scire facias* case decided by the Superior Court of Pennsylvania, *Cummings v. A. F. Rees, Inc.*, 126 Pa. Super. 117, 190 A. 416, where the court said that an order quashing *scire facias* which made an additional defendant was different from one which permitted the additional defendant to be made. In the last case the court said this would have been merely a direction to proceed with the trial on its merits and would have been interlocutory, but an order which refused to permit the defendant to be made was comparable to a judgment of non pros, and was final as to the right of appellant to bring the additional defendant on the record. The court reversed the order and brought the defendant in. This case is cited by Professor Moore as a contrary decision to *Baltimore & Ohio R. R. v. United Fuel Gas Co., supra.* Pennsylvania has been a pioneer among the states in third party practice, and its decisions are entitled to added consideration for that reason.

Both before and after the decision in *Baltimore & Ohio R. R. v. United Fuel Gas Co., supra,* therefore, in three other Federal Circuits, four immediate appeals were considered and decided, and district courts were affirmed in denying impleader without a suggestion that the appeals were premature. We cannot consider these decisions as deciding that question since it was not specifically raised, but, on the other hand, we cannot assume that the judges, who passed upon these cases, were ignorant of it, or that it did not occur to them. We have, in this State, as we have shown, decided two cases in which it was tacitly assumed that the orders were immediately appealable. It seems to us in the nature of things that to decline to hear an appeal from an order dismissing third party complaints, thereby requiring the original defendant to try his case without having the third party in it, and then, on a second appeal to have a judgment against the original defendant reversed on the ground that the third party defendant should have been in,

would make somewhat of a mockery of the rule which is designed to have all parties in one action if they can be properly brought before the court, and to prevent a multiplicity of suits. The judgments for costs do not change the nature of the decisions, (*Emersonian Apartments v. Taylor,* 132 Md. 209, 103 A. 423), but we look to the substance of the matters involved. A situation where a third party is impleaded differs materially from one where an application to implead is denied. Where a third party is impleaded, he is in no worse situation than if he had been originally sued. Nothing final has been decided against him. He still has the opportunity to try his case, and if it goes against him, he can then appeal. No rights of the original plaintiff have been interfered with, because the result is only that he has another defendant in the case, against whom he may recover. Factual considerations such as the desirability *vel non* to the third party defendant of having to try his case with the original defendant, or the lengthening of the trial with some possible additional costs to the plaintiff, are matters which go to the exercise of the court's discretion, but they do not affect the finality of the order impleading the third party. On the other hand, where the trial court declines to implead a third party, the defendant's right to proceed against that third party, in that proceeding, has been finally determined, and he should have the right to have that question settled by the appellate court before he is forced to submit to trial without such third party in the case. We think, where impleading is denied, the spirit and the intention of the rule are best served by immediate appeals. It is our conclusion, therefore, that the orders herein are final, and that the appeals are not premature, but can and should be heard at this time. The motions to dismiss will therefore be overruled.

That brings us to the other question, which is whether the court below abused its discretion in striking out the orders. The rule for making third parties was designed to facilitate trials, and was intended to be administered

in the discretion of those judges who would preside over those trials. In the explanatory notes of the Reporter, 1947 Supplement, Annotated Code, page 2104, it is said "The granting of the motion is within the discretion of the court in all cases." That does not necessarily mean, however, that where the action of the lower court is clearly arbitrary or has no sound basis in law or in reason, it could not be reviewed, but it does mean that we will not reverse the judgment of the trial court, unless there is grave reason for doing so.

The appellants contend that the spirit of the rule requires that all suits growing out of the same transaction be tried together if possible. They say that in this case the claim of the plaintiffs is based upon an explosion caused by the blasting of a tunnel for the City by Rosoff. That it will be necessary to prove in the case against them that the damage was caused by such an explosion, and the question whether it is necessary for them to allege negligence in their suit against the City and the Contractor, can, and probably will, be raised by demurrers, so that when the cases are tried, if they have to be tried separately, there will be duplication of a great deal of the evidence, and a possibility of two juries disagreeing on the same facts. They state that the rule permits an action of contract and an action of tort to be tried together, and that the fact that they may have a right of subrogation against appellees brings them within the rule. See *Lee's, Inc. v. Transcontinental Underwriters of Transcontinental Ins. Co.*, D. C., 9 F. R. D. 470, and cases cited. They also contend that since their claim will be by way of subrogation, and they will succeed only to such rights as their principals may have, the statute of limitations is already running against them, although they cannot now bring a suit, and, therefore, it is quite possible, if the appellees are not now impleaded, the appellants may be forever barred from bringing a suit against them.

On this last question there is authority for the appellant's construction of the running of the statute.

*American Bonding Co. of Baltimore v. National Mechanics' Bank,* 97 Md. 598, 607, 55 A. 395, 99 Am. St. Rep. 466; *Poe v. Philadelphia Casualty Co.,* 118 Md. 347, 84 A. 476; *New Amsterdam Casualty Co. v. Baker,* D. C. Md. 74 F. Supp. 809. Assuming without deciding, that this is a correct statement of law, the appellants are in no worse position than if the original plaintiffs had not brought their suits until near the end of the statutory period. If this were not done with any intent to defraud the insurance companies, or as part of a conspiracy against them, the companies would be barred from bringing a suit against the tort feasors because, by the time they paid judgments obtained against them, the period of limitations would have expired. This is one of the risks taken by the insurance companies when they issue their policies of insurance, and we do not think we should consider that as a reason for giving them the relief they ask. However *cf. Hogan v. Hodges,* 6 N. J. Super. 55, 69 A. 2d 893.

As to the other arguments of the appellants, the reasons why they are not controlling, are set forth in the opinion of Judge Chesnut in the case of *Lee's, Inc. v. Transcontinental Underwriters, supra.* This was one of these cases in which the question was decided in the United States Court. Judge Chesnut held that the impleader was within the authority of the Federal rule because that rule contemplated the service of a third party complaint on a person not a party "who is *or may be liable* to him for all or part of the plaintiff's claim against him." [9 F. R. D. 471] The same wording appears in Rule 4, and we think the same construction applies, and that our rule is broad enough to include a claim by subrogation. While admitting that the main purpose to be gained by applying the rule is economy of time of the courts, parties and witnesses, and avoidance of expense for delay involved in trying a case twice where once would suffice, Judge Chesnut pointed out that it was quite possible to visualize difficult questions of evidence with respect to admissibility on the claim of

plaintiff against the defendant, on the one hand, and the subrogation claim on the other. He pointed out that the number of witnesses to be examined on the contract case would probably be less than on the tort case, and that the length of time would be very substantially increased if both suits were tried before the same jury. He envisaged that possible difficulties as to the admissibility of evidence might result in appeals which could be avoided if the cases were separately tried. He also said that the interests of the plaintiff should not be overlooked, and great extra expense might be entailed upon him. He thought that while there might be some practical advantage to the original defendant, there were disadvantages to the other parties of the case. He concluded that while there was power to allow the impleader, it should be vacated in the exercise of a sound discretion.

We are unable to find any abuse of discretion in the conclusions reached by Chief Judge Smith in the instant cases, which it may be presumed were based upon the same reasons as those set out by Judge Chesnut. Even if we thought that time might be saved and other considerations might lead to a better result, if the cases were tried together, we could not hold that the judge of the *nisi prius* court, which is to hear the cases, has abused his discretion in holding otherwise. Questions of this nature are much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred. There is nothing in the cases before us which shows any of these considerations to be present in the slightest degree, and we will, therefore, affirm the orders of the lower court.

*In No. 163 motion to dismiss denied, order affirmed with costs.*

*In No. 164 motion to dismiss denied, order affirmed with costs.*