STEM ET AL. *v.* NELLO L. TEER COMPANY, INC. ET AL.

[No. 94, October Term, 1956.]

*Decided April 4, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*W. Hamilton Whiteford,* with whom was *William H. Price* on the brief, for the appellants.

*John W. T. Webb,* with whom were *Webb, Bounds & Tavers* on the brief, for Nello L. Teer Company, Inc.

*Richard M. Pollitt,* with whom was *Vaughn E. Richardson* on the brief, for Eastern Contractors, Inc.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the original defendants in a Lord Campbell's Act suit, arising out of a motor vehicle collision, from judgments entered on directed verdicts in favor of two other defendants, whom the appellants had impleaded under third party practice. The plaintiff recovered judgment against the original defendants, pursuant to a stipulation and under instructions of the trial court in accordance therewith, which was apportioned among the dependents of Benjamin F. Foxwell. There is, of course, no appeal from that judgment, which has been entered to the use of the appellants and presumably has been paid by them.

The original defendants, now appellants, are Aubrey J. Stem, Jr., trading as Stem Motor Lines ("Stem") and James Dawson Carroll, an employee of Stem. The decedent for whose death the suit was brought, Benjamin F. Foxwell, was killed in a head-on collision between his automobile, which he was driving, and a truck owned by Stem and driven by Carroll. Stem and Carroll impleaded the appellees, Nello L. Teer Company, Inc. ("Teer") and Eastern Contractors, Inc. ("Eastern"). Despite a denial by the original defendants of liability on their own part, the chief objective of the third party claim was apparently to enforce rights of contribution against Teer and Eastern under the Uniform Contributions Among Tortfeasors Act, Code (1951), Article 50, Secs. 20-29. (Sec. 26 thereof, dealing with procedure, was superseded by our General Rules of Practice and Procedure,

Pt. Two, III, Rule 4, which was in force when this case arose and was tried, and is now embodied in Rule 315 of the Maryland Rules.)

Teer challenged the validity of the service of the third party claim because of a defect in the order authorizing it, but its objection was overruled. Four days later, and before its time to answer the third party complaint had expired, the equitable plaintiffs (referred to below as the "plaintiffs") filed an amended declaration (each containing but a single count). The amended declaration joined Teer and Eastern as defendants. Stem and Carroll filed the general issue pleas. Eastern, who had filed the general issue pleas to the third party claim, also filed them to the amended declaration. Teer demurred to the amended declaration, did nothing more about the third party claim, and, when its demurrer was overruled, filed the general issue pleas to the amended declaration. The case, then went to trial on the general issue pleas of all of the defendants and the plaintiffs' joinder of issue thereon. At the conclusion of the plaintiffs' case, Teer and Eastern moved for directed verdicts in their favor and the motions were granted over the objections of Stem and Carroll.

Following an overnight recess Stem and Carroll declined to offer any testimony. Thereupon, pursuant to the stipulation and instructions above mentioned, the jury returned a verdict in favor of the plaintiffs and judgment was entered accordingly. The appeal, as already stated, is from the judgment in favor of the other defendants, Teer and Eastern.

The questions presented on this appeal are: first, whether there was sufficient evidence of negligence on the part of Teer and Eastern at the conclusion of the plaintiffs' case to warrant submitting the plaintiffs' claim against them to the jury; and second, whether their motions for directed verdicts should have been granted before hearing testimony on behalf of the original defendants who had first brought Teer and Eastern into the case by impleading them.

### The Facts.

Carroll was driving Stem's truck to deliver a load of fertilizer at a farm owned by John H. Delaney and Sons, located

south of the point where the collision occurred. Carroll did not know the way. He stopped at Nichols' office in Fruitland, just south of Salisbury, to make inquiry. There he met Charles Nichols, Delaney's farm manager, who was about to drive back to the farm in his station wagon. Nichols suggested that Carroll follow him, and they drove south on U. S. Route 13, with Nichols leading the way. This was at about 11:30 on the morning of June 3, 1955, which was a clear day.

At that time Teer, as the general contractor, was constructing for the State Roads Commission a new roadway paralleling the existing main State highway, U. S. Route 13, between Salisbury and Princess Anne. Teer had a contract with Eastern under which Eastern was to haul fill dirt from a pit about three miles south of Fruitland and on the west side of Route 13 to the point where Teer was to use it in the road building work. This point was to the south of the pit and the route to be followed was easterly from the pit over a dirt road to Route 13, then south on the latter to a turn-off point. The pit apparently belonged to Teer and Teer had a crane there which was used to load Eastern's trucks with fill dirt.

Route 13 is a heavily traveled highway. At the point where the dirt road used by Eastern's trucks intersected it, there were fairly long, straight stretches (the exact length of which is not clear) to both the north and the south. By arrangement between Teer and the State Roads Commission warning signs were erected, two to the north and two to the south of the intersection, one at a distance of 1000 feet and one at a distance of 500 feet in each direction. The more remote sign was marked "Caution" or "Slow", the one 500 feet from the intersection was marked "Caution, Truck Entrance", and the speed limit for the construction zone was posted as 35 miles per hour, instead of the usual 50 on that road. There were also two large drums painted red, one a little to the north, the other a little to the south of the intersection, set up on the white, painted line dividing the north and south bound lanes of Route 13. In addition, Teer stationed a flagman at the intersection in question. It was his

duty to warn or "flag down" traffic on the main highway so as to permit the hauling trucks to enter.

Nichols, who drove the road frequently, was familiar with all of these facts and was on the lookout for the flagman. As Nichols approached the intersection an Eastern truck was about to enter. The flagman stepped to the side of the road and "dropped his flag" as a signal to stop when Nichols said he was "just about to him" (the flagman) or "very close" to him, or, as he said in another portion of his testimony, about "twenty strides" away. In any event, Nichols stopped at the intersection without entering it. He testified that "It was a sudden stop—if I was loaded—but with what I was driving, it was not too . sudden." He also testified "There wasn't any trouble to stop." He said his speed had been 30 to 35 miles an hour as he approached the intersection.

The Stem truck was following him. At what distance is not clear. Driscoll, the driver of Eastern's truck waiting to enter Route 13, said he first noticed it, after Nichols' station wagon had stopped, about 90 to 95 feet behind Nichols. He estimated that the truck was about 45 feet behind Nichols' car when the truck driver first applied the brakes. There was no skid mark. Nichols' testimony with regard to the speed of the truck was far from positive, since he was not watching it, but we shall take it as warranting an inference that it was about the same as his own (30 to 35 miles per hour) and for purposes of testing the sufficiency of the evidence against Teer and Eastern we shall disregard Driscoll's higher estimate of 40 or 45 miles an hour.

The shoulders of Route 13 were rather narrow—perhaps six or eight feet wide—north and south of the intersection, and there was a guardrail at the far side of the shoulders, with openings only for the dirt road. This may have looked discouraging to Carroll as a means of avoiding hitting Nichols' car. It also should have been evident to him for some distance after he entered the clearly marked danger zone.

The truck carried a load weighing seven or eight tons. As the driver tried to stop it, he swung over into the northbound lane of the highway, passed Nichols' stopped car at a speed of about five miles an hour (as estimated by Nichols)

and at the south side of the intersection collided head-on with Foxwell's car. None of the witnesses who testified apparently saw the Foxwell car until almost the moment of impact. The evidence indicates that it should have been visible for a minimum distance equivalent to the length of three or four city blocks—say 900 to 1200 feet. There was some testimony to show that Foxwell's speed was not excessive.

### Sufficiency of Evidence against Teer and Eastern at the Close of the Plaintiffs' Case.

When the appellants filed their third party claim, they asserted two grounds of negligence against Teer and Eastern. These grounds were later included in the plaintiffs' amended declaration.

One was that as Eastern's loaded trucks made the turn into Route 13 they spilled dirt and debris over the highway and that this contributed to the accident. This claim appears to have been completely abandoned, and it found no support in the evidence. We shall therefore not discuss it further.

The other ground upon which negligence was charged against Teer and Eastern was based upon the alleged negligence of the flagman in "flagging down" traffic on Route 13. The appellants contend that this was enough to take the case to the jury as against both Teer and Eastern.

So far as we can see, there was no evidence to show that Eastern hired the flagman or that it had any control over him or over the way in which he performed his work which might render Eastern liable for his negligence. It seems to have been agreed that Eastern was an independent contractor in its relationship with Teer. The flagman was employed by Teer and we think that the evidence showed that he remained Teer's employee, that he was engaged in furthering Teer's business and that he was not borrowed by Eastern, though Eastern received some benefit from his services. See *Vacek v. State, Use of Rokos,* 155 Md. 400, 142 A. 491; *Dippel v. Juliano,* 152 Md. 694, 137 A. 514; *Baltimore Transit Co. v. State, Use of Schriefer,* 184 Md. 250, 40 A. 2d 678, and the full review of the cases therein contained. Ordinarily such

a question is one for the jury, but on the evidence actually presented in the instant case, there does not appear to be any room for an inference that the flagman was Eastern's servant. On the general principles of law involved, see also the *Restatement, Agency,* Sec. 227, and Comment *b* thereunder.

We are also of the opinion that the evidence presented up to the close of the plaintiffs' case was not sufficient to take the case to the jury as against the flagman's employer, whether his employer was Teer (as we think) or Eastern.

As was said in *Brehm v. Lorenz,* 206 Md. 500, 506, 112 A. 2d 475, 478, in which the opinion was written by Judge Delaplaine: "* * * in any action for damages the court is not justified in inferring negligence merely from possibilities. A mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. The plaintiff must produce some evidence that the defendant, either by his act or omission, violated some duty incumbent upon him that caused the injury. If there is no evidence upon which a rational conclusion may be based in support of the plaintiff's claim, the court should withdraw the case from the jury." Surmise and conjecture are not enough to warrant submitting the case to the jury. *Maas v. Sevick,* 179 Md. 491, 20 A. 2d 159; *Goldman v. Johnson Motor Lines,* 192 Md. 24, 63 A. 2d 622 (contributory negligence). In *Baltimore Transit Co. v. Worth,* 188 Md. 119, 140, 52 A. 2d 249, 259, Judge Collins quoted with approval the following passage from Judge Mitchell's opinion in *Armiger v. Baltimore Transit Co.,* 173 Md. 416, at 427, 196 A. 111, at 115: "As has been intimated, the application of the principle of proximate cause to the facts in a given case is not always without its difficulties. But the general rule is that, where the injury of the plaintiff is the result of concurring causes, the question is one which should be submitted to the jury; unless, however, the evidence discloses a state of facts showing no connection between the injury and the negligence charged, except the bare possibility that the former resulted from the latter, or an uncontroverted state of facts establishing an efficient intervening cause which would pre-

clude the defendant's act from being the proximate cause of injury."

The facts, which we have stated in some detail, show that Nichols was able to stop his station wagon at the flagman's signal somewhat suddenly, but without difficulty, short of the intersection and that Carroll was driving some distance behind Nichols. How far back is not clear, but the only testimony on that point was that the truck was still 90 or 95 feet behind the station wagon when the station wagon had stopped. To ascribe the failure of Carroll to stop the Stem truck, without crossing into the wrong lane and without hitting Nichols' vehicle, to any suddenness of the "flagging down" of Nichols would, we think, be a matter of mere surmise or conjecture. We think that the trial court was correct in holding that the evidence before it was insufficient to warrant a verdict against Teer or Eastern.

### Directing a Verdict for Impleaded Defendants at Conclusion of Plaintiffs' Case.

The more important question in this case is whether or not it was erroneous to direct verdicts in favor of the two defendants who were initially brought into the case by being impleaded by the original defendants, before the original defendants had had an opportunity to present any evidence against the impleaded or third party defendants. The question was raised in the trial court, and the court recognized it as one presenting difficulty and not previously decided by this Court. The trial court followed its established practice in such cases.

The answer to this question seems to turn on whether or not the procedure followed deprived the original defendants of a substantive right. Their right, if any, to proceed against Teer and Eastern is derived from the Uniform Contributions Among Tortfeasors' Act (usually referred to below as the Tortfeasors' Act). That Act as adopted in Maryland (Code, 1951, Art. 50, Secs. 20-29) defines "Joint tort-feasors" as meaning "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

(Sec. 20 (a).) Sec. 21 (a) declares that "The right of contribution exists among joint tortfeasors." Subsecs. (b) and (c) state some limitations upon that right.

Sec. 26 of the Tortfeasors' Act set up a third party procedure by which a defendant seeking contribution might, as a third-party plaintiff, implead a person not a party to the action "who is or may be liable as a joint tortfeasor to him *or to the plaintiff* for all or part of the plaintiff's claim against him." This Section also provided that "The plaintiff *shall* amend his pleadings to assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant." (Italics supplied in the above quotations.) While this Section was in force, it was stated that failure of the plaintiff to amend his declaration as prescribed did not prejudice the original defendants' right to have the third party defendant brought in. *Shedlock v. Marshall*, 186 Md. 218, 46 A. 2d 349. However, in that case, no question seems to have been raised as to that matter, and any defect was said to have been waived.

In 1947, Sec. 26 (then 27) of Article 50 was superseded by our former Rule 4 of Part Two, III, of the General Rules of Practice and Procedure (now Rule 315 of the Maryland Rules). This Rule dealt with third party practice generally and was not limited · to contributions among tortfeasors. It eliminates the words found in Sec. 26 of the Tortfeasors' Act "or to the plaintiff", which we have italicized above, and changes "shall" to "may" with regard to the plaintiff's amending his declaration. These procedural changes did not make any change in substantive rights. *O'Keefe v. Baltimore Transit Co.*, 201 Md. 345, 94 A. 2d 26. The change in language embodied in Rule 4 was in conformity with an amendment to Rule 14 of the Federal Rules of Civil Procedure (from which our Rule is derived), proposed in 1946, which became effective in 1948. In *Baltimore Transit Co. v. State, Use of Schriefer*, 183 Md. 674, 39 A. 2d 858, decided in 1944, this Court had held that there was no right of contribution where the injured person had no right of action against the third party defendant.

Making the amendment of the declaration optional with the plaintiff, instead of mandatory, was also in conformity with the 1948 amendment of Rule 14 of the Federal Rules. This change was in conformity with what may have been only a *dictum* in *Shedlock v. Marshall, supra,* to the effect that the absence of an actual amendment did not affect the rights of the parties. See also the dissenting opinion of Judge Marbury concurred in by Chief Judge Bond in *Brotman v. McNamara,* 181 Md. 224, 232, 29 A. 2d 264. The history of our third party practice is fully reviewed in *Northwestern National Ins. Co. v. Samuel R. Rosoff, Ltd.,* 195 Md. 421, 73 A. 2d 461 (opinion by Marbury, C. J.), and in the Reporter's Notes to the Second Report of the Committee on Rules of Practice and Procedure therein referred to. See 1947 Supp. to the 1939 Code, pp. 2095-2107.

The intention of the Tortfeasors' Act and of the third party practice rule which has superseded the procedural section of that Act to have the liabilities of all parties passed upon in one case has been commented upon frequently. See *Elliott v. Larrimore,* 203 Md. 526, 530-531, 101 A. 2d 817, 820, and cases there cited.

In *Northwestern National Ins. Co. v. Samuel R. Rosoff, Ltd., supra,* it was said, "Where a third party is impleaded, he is in no worse situation than if he had been originally sued." (195 Md. 433.) A somewhat similar statement is made in *Elliott v. Larrimore* (203 Md. at 531-532, 101 A. 2d 820) that: "Many variations may occur in a case under the flexibility provided for by Rule 4 [now 315]. The plaintiff, after the third party has come into the case, may plead against him and certainly then, the status of the new party is not distinguishable from that he would have occupied had he been originally sued." We think that neither of these statements should be read out of their context, and that when read within it they refer simply to the situation of the impleaded defendant as against the original plaintiff.

As between the impleaded defendants and the original defendants the situation is not identical. *Shedlock v. Marshall, supra,* and the amendment of the procedural rule with regard to impleading joint or concurrent tortfeasors show that

whether or not the plaintiff amends his declaration after a third party defendant is impleaded does not affect the substantive rights of the parties. At this point we must remember that the Tortfeasors' Act created a substantive right of contribution. To press the similarity of the position of the impleaded defendant to that of an original, separate defendant, where two or more are originally sued by the plaintiff, to the point of saying that there is no difference, might result, and in this case would result, in cutting off an original defendant's right of contribution, unless we should hold that the multiple-party proceeding was not *res judicata* as between the original defendants and the impleaded defendants. That would seem a strange result of a proceeding which, though it is not in all situations the exclusive means of asserting a claim for contributions among tortfeasors (*O'Keefe v. Baltimore Transit Co., supra*), is intended to bring an end to litigation.

We think that in order to prevent a procedural circumstance from undermining a substantive right we must hold that what was said in *Brotman v. McNamara, supra,* (181 Md. at 228), applies to this case: "Adequate provision is made by Section 27 (a) for the trial of a case fairly and fully on its merits, without regard to the position of any of the parties as original defendants or otherwise. If the plaintiff limited his testimony to one defendant only, the one so implicated is certainly given every opportunity to make his defense and show that others are either jointly or solely liable."

We may note that in the *Brotman Case,* and in *East Coast Freight Lines v. City of Baltimore,* 190 Md. 256, 58 A. 2d 290, motions for directed verdicts were granted only at the conclusion of all testimony. The same was, of course, true of a judgment N.O.V. entered in *Koester Bakery Co. v. Poller,* 187 Md. 324, 50 A. 2d 234.

The purpose of the third party practice provided for by the Tortfeasors' Act and by the Rules which have superseded it, to try in one action all phases of litigation among the original and impleaded parties, may at times cause some inconvenience, delay and expense to one or more parties. Probably, in most instances, they amount to less than what

would be involved in successive suits. In a situation such as that which developed in the instant case, we believe that the trial court may, in its discretion, and where it may deem it practicable to do so, take appropriate steps to minimize the inconvenience, delay and expense to parties in the position of the impleaded defendants, against whom the plaintiffs' evidence is insufficient to take the case to the jury. For example, the original defendants might have been called upon at the close of the plaintiffs' case to make a proffer of any testimony which they proposed to offer to show liability on the part of the impleaded defendants, or to go forward first with the presentation of such evidence. Of course, in many instances it might be impracticable to segregate a defendant's evidence in his own favor from that against an impleaded defendant and no hard and fast rule could be laid down to be applied in all cases and in the varying situations which may develop. The flexibility of third party procedure under modern rules was commented upon in *Elliott v. Larrimore, supra.*

We should add that the defendant Teer's objection to the service of the original third party complaint was one which could easily have been cured by a new court order free of the obvious error (due to failure to correct the name of the County following removal from one court to another of the same circuit). In saying this, we do not mean to imply disagreement with the ruling of the trial court which denied Teer's motion to quash.

The course which this case has taken and the agreement between the appellants and the original plaintiffs on the amount of the verdict would not be binding upon the impleaded defendants. It would fix the maximum amount which might be apportioned among all defendants if Teer or Eastern or both were found liable on a new trial, but Teer and Eastern might contest the reasonableness of the amount. The burden of proof as to this would be on them. *O'Keefe v. Baltimore Transit Co., supra.* On such a trial, the only parties would be the appellants and the appellees. The liability of the original defendants would not be at issue, for that has been determined. They would have the opportunity

to present such evidence, if any, as they may have to show that the impleaded defendants or either of them had been guilty of negligence which contributed directly to causing the collision. See *East Coast Freight Lines v. City of Baltimore, supra,* 190 Md. at 280-281, 58 A. 2d 301-302. If such evidence amounted to no more than that presented at the original trial, it follows from what we have already said that there would be nothing for submission to a jury.

The award of costs for depositions taken by Teer but not used at the original trial should, we think, be passed upon by the trial court.

We find it somewhat difficult to anticipate what evidence of any value to them the original defendants may be able to produce against the impleaded defendants which would add to or alter the evidence produced at the original trial. Carroll did not testify, nor did two passengers who were in the Foxwell car. The lack of any proffer of what the appellants sought to prove leaves us with considerable doubt as to whether they actually suffered any prejudice from the granting of the motions for directed verdicts. However, their being cut off from any opportunity to present whatever evidence they could to fasten liability on the appellees leads us to the conclusion that the judgments for the appellees should be reversed and the case remanded for trial of the issues between the original and the impleaded defendants.

> *Judgments reversed and case remanded for further proceedings not inconsistent with the opinion herein; costs to abide the outcome.*

HAMMOND, J., delivered the following opinion, dissenting in part.

I concur fully with the opinion of the Court down to the last paragraph, which remands the case. It seems entirely clear that the appellants' claim of error is based on refusal to admit that the trial court was right in holding that there was no evidence of negligence on the part of Teer and Eastern and continued reliance on the fixed belief that the jury

should have been allowed to decide that question on the plaintiff's evidence. The appellants made no proffer to the court below as to additional evidence of negligence of the impleaded defendants; and, indeed, did not even suggest informally what they could produce. Neither in brief nor in argument before this Court—although the direct question was asked—was there any suggestion as to what could be proven if the case were remanded. The recital in the opinion of the Court as to the facts of the accident make it plain that unless there were additional facts not even hinted at in the record as it stands, the appellants were not prejudiced by the lack of opportunity to hold the codefendants. This is substantiated by their refusal to even offer testimony and so, in effect, to admit liability. After the court had ruled that Teer and Eastern were no longer in the case, the appellants could have offered testimony in their own behalf and, if that testimony had shown the evidence of negligence on the part of Teer or Eastern, the trial court, under the rules, could have reversed its decision and reinstated the impleaded defendants in the case.

This Court has held repeatedly that even if there were some technical error below, judgment will not be reversed if prejudice is not shown. I think it was not shown here, and that the judgments should be affirmed.